## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jessi Davis, Allyson Halperin, Emily Paige Page, Brianna Aaron, Leanna Rose, and Ashley Franco, individually on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>Angelcare USA, LLC, and Playtex Products, LLC,<br><br>                              Defendants. | Case No.<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

        Plaintiffs Jessi Davis, Allyson Halperin, Emily Paige Page, Brianna Aaron, Leanna Rose, and Ashley Franco (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendants Angelcare USA, LLC ("Angelcare") and Playtex Products, LLC ("Playtex") (collectively, "Defendants").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

### NATURE OF THE ACTION

        1.      This is a putative class action lawsuit on behalf of purchasers of Playtex Baby™ Diaper Genie® Refill cartridges (collectively, the "Refill Products" or "Refill Cartridges") against Defendants for manufacturing, distributing and selling underfilled and mislabeled Refill Products.  The disposable diaper market is a massive, multi-billion market industry.  Playtex is one of the biggest baby product manufacturers and distributors in the nation, and its Diaper

Genie line is the "#1 selling Diaper Pail brand" in the United States.[1]  Diaper pails are effectively trash bins designed to store used disposable diapers.  At heart, this case is simple.  While Defendants market the Refill Products as providing a "1 YEAR SUPPLY" of diaper bags for its diaper pales, the Refill Products provide far less than advertised.  The deception is stark, and preys on new parents yearning to simplify their lives, believing that they are buying a product that will ensure they do not have to repeatedly run to the store to buy more diaper disposal bags.  Instead, parents pay a premium for an advertised year's worth of product, but receive a small fraction of what Defendants promise on the Refill Products' labels and advertising.

2.      Defendants' Diaper Genie is a baby diaper disposal system, consisting of a large plastic container and lid.  The Diaper Genie system is designed to contain odor coming from soiled diapers.  One of its key advertised benefits is the ability to easily swap out bags of soiled diapers without having to replace a plastic bag each time as in a traditional trash can, as the system comes with a built-in bag disposal and sealing mechanism.  The system requires a Refill Cartridge, which consists of a plastic ring that releases a continuous plastic bag that can be cut off and tied to form the "ends" of the bag, with diapers put through the center of the ring and into the bag.  After the container is filled with dirty diapers, the continuous plastic bag from the Refill Cartridge can be tied off and cut, thereby sealing all the diapers trapped inside for disposal. After cutting off the dirty diaper bag, customers can dispense more plastic from the Refill Cartridge, to form more bags, until the entire Refill Cartridge is used up – requiring the replacement of a Refill Cartridge.  For lack of a better descriptor, the string of diaper bags released by the Refill Cartridges is at times referred to as a "diaper sausage," with customers able to separately cut each "sausage" for disposal before releasing the next bag for diapers.

---

[1] Diaper Genie, https://diapergenie.com/ (accessed Sept. 30, 2022).

3.    The following shows basic images of how the Diaper Genie and Refill Cartridges work.  In the center photo, the Diaper Genie is closed, with all soiled diapers inside.  In the photo on the left, the Diaper Genie's front door is opened to reveal a plastic bag, dispensed from a Refill Cartridge, containing soiled diapers.  In the image on the right, an unused Refill Cartridge is shown.



4.    Prior to securing a Refill Cartridge in the Diaper Genie, a customer pulls on the end of the continuous plastic bag and ties the end, as can be seen below.



5.      The Refill Cartridge, with the bag extended and tied on the bottom, is then placed in the Diaper Genie, with the top end of the bag open so that customers can insert soiled diapers, as seen below.



6.      When the plastic bag is full, a customer has to open the front door of the Diaper Genie, cut the top of the plastic bag that is still attached to the Refill Cartridge, tie off the top end, and form and individual bag that can then be separately discarded, as seen below.





7.      After discarding the full bag, customers can then pull on the plastic emanating from the Refill Cartridge, tie off the bottom end, and repeat the process of making more plastic bags until the entire Refill Cartridge is used up.  At that point, customers must dispose of the empty Refill Cartridge and swap in a new Refill Cartridge, starting the process over again.

8.      Consumers, typically parents or guardians of babies, look to diaper pail systems to limit odor in their homes and ensure that the constant diaper-changing process is no more difficult than necessary.  Thus, when shopping for such a system, consumers are drawn to any marketing that suggests simplicity, and Defendants have certainly capitalized on that demand. Defendants falsely label their Refill Products with the advertisement "1 YEAR SUPPLY," even though the Refill Products are incapable of holding the number of diapers that all but the smallest minority of babies go through in a year.  The vast majority of consumers that use Defendants' Refill Products do not receive a one-year supply of the Products even when following all stated instructions and using the Products as intended. Defendants are accordingly misleading consumers into purchasing a stated, precise sum of Refill Products, but delivering far less than promised.

9.      All of Defendants' Refill Products feature the same deceptive advertising.  These include Defendants' Diaper Genie Refills available in in packs of 1 through 8.  As shown below, for example, the front label of the Diaper Genie Refills states that the 8 pack size will provide a "1 YEAR SUPPLY."  And, every pack of Diaper Genie Refills states that "EACH REFILL HOLDS UP TO 270 DIAPERS," regardless of the amount of cartridges in any given pack.



10.     All Refill Products that are labeled as providing a "1 YEAR SUPPLY" consist of 8 individual refill cartridges.  Thus, according to Defendants' labeling and marketing, 8 refill cartridges will provide an entire year's supply of Refill Products.  The front label of the Refill Products also states that each individual refill cartridge "HOLDS UP TO 270 DIAPERS" (these statements collectively, the "Duration Claims").  Refill Products that contain less than 8 cartridges do not bear the "1 YEAR SUPPLY" representation, but still represent on the labels that each individual refill cartridge "HOLDS UP TO 270 DIAPERS," or an effectively identical Duration Claim.

11.     For example, as shown below, a 3 pack of Defendants' Refill Products states that it "Holds Up To 810 Diapers," which is effectively the same thing as saying that each of the three individual refill cartridges in the pack hold up to 270 each (270 x 3 = 810).  And, a 4 pack of Defendants' Refill Products states that they "HOLD UP TO 1080 TOTAL DIAPERS, which is, again, effectively the same thing as saying that each of the four individual refill cartridges in the pack holds up to 270 each (270 x 4 = 1080).



12.     All of Defendants' Duration Claims, are false and misleading.

13.     On the side panel of Defendants' Refill Products, Defendants provide the following chart that appears to disclaim the representations on the front labels of the Products concerning their ability to hold up to 270 diapers:



**We've got you covered, no matter the size**

Use the chart below to determine how many diapers each refill holds based on the size diaper your baby wears.

| DIAPER SIZE | NEWBORN < 10 lbs | 1 8-14 lbs | 2 12-18 lbs | 3 16-28 lbs | 4 22-37 lbs | 5 > 27 lbs |
|---|---|---|---|---|---|---|
| ESTIMATED DIAPERS PER REFILL | 270 | 233 | 192 | 176 | 144 | 107 |

14.     But Defendants' math does not hold up.  Using Defendants' own math shows the complete absurdity of its prominent claim that the 8 pack of the Refill Products provides a "1 YEAR SUPPLY" of diaper bags.  As demonstrated in Table 1 below, Defendants' Duration Claims suggest that a newborn baby will only require 5.92 diapers per day, down to 2.35 diapers per day for babies over 27 pounds.

| Table 1 | | | |
|---|---|---|---|
| **Diaper Size** | **Defendants' Estimated Diaper Capacity Per Cartridge** | **Defendants' Estimated Diaper Capacity of a "1 Year Supply" Package[2]** | **Number Of Diapers Used Per Day According To Defendants[3]** |
| **0** (Newborn) < 10 lbs | 270 | 2,160 | 5.92 |
| **1** 8-14 lbs | 233 | 1,864 | 5.11 |
| **2** 12-18 lbs | 192 | 1,536 | 4.21 |
| **3** 16-28 lbs | 176 | 1,408 | 3.86 |
| **4** 22-37 lbs | 144 | 1,152 | 3.16 |
| **5** > 27 lbs | 107 | 856 | 2.35 |

15.     As discussed below, experts, academia, pediatricians, and Defendants'
competitors agree that most babies require far more diapers - *roughly twice as many* - than
Defendants have budgeted in their equations.  Real world consumer experience also confirms
this fact, as shown by scores of reviews of the Refill Products, discussed below. Indeed, babies
that truly use as few diapers as implied by Defendants' math are either being improperly taken
care of by their caregivers (thereby subjecting the babies to health risks), or have health issues
that are abnormal.  A baby that only uses the number of diapers budgeted by Defendants should
immediately seek medical attention, as low urination and defecation are major red flags that
something is wrong with the baby.  Accordingly, the vast majority of consumers will use far
more diapers (roughly twice as many) over the course of a year than would fit in Defendants' "1

---

[2] Arrived at by multiplying the diaper capacity per cartridge times 8, the number of cartridges in
a "1 year supply" pack.

[3] Arrived at by dividing the number in the preceding column, the "1 Year Supply" of diapers, by
365, the number of days in a calendar year.

YEAR SUPPLY" of diaper bags, making the statement false and misleading. Indeed, consumers would effectively have to buy *two* of Defendants' "1 YEAR SUPPLY" of Refill Cartridges to dispose of an average year of diapers, meaning that consumers receive roughly on *half* of what Defendants promise on the Products' labels.

16.     Further, Defendants' representations that each Refill Cartridge holds up to 270 diapers, that three packs correspondingly hold up to 810 diapers, and that four packs hold up to 1080 diapers are also false and misleading. Each of these representations assumes misleadingly that *only newborn diapers will be put into the diaper pale*. By Defendants' estimates, a 3 pack should last 4.5 months and fit up to 810 diapers, while a 4 pack should last 6 months and fit up to 1,080 diapers (since an 8 pack supposedly lasts 12 months). But, unless something is terribly wrong, the vast majority of babies are no longer newborn size by the time they are, *e.g.*, two months, three months, four months, five months, and six months old. Accordingly, it is not conceivable that any healthy baby would ever be able to use the number of diapers prominently listed on the front of Defendants' labeling, as the number of diapers that can fit in Defendants' Refill Cartridges necessarily decreases over time as the baby gets older and bigger (and the associated amount of urine and waste, as well as the size of the diapers, get bigger as well). No healthy baby could have 1,080 diapers fit in a 4 pack of Defendants' Refill Cartridges because the baby, by definition, would only be a "newborn" for a fraction of that time, whereas Defendants' 1,080 representation assumes that the baby stays an infant the entire time. Likewise, no healthy baby would have 810 diapers fit in a 3 pack of Defendants' Refill Cartridges because the baby, by definition, would only be a "newborn" for a fraction of that time.

17.     Defendants engaged in widespread false and deceptive marketing and labeling of their Playtex Baby Refill Products.  Defendants employ a classic bait-and-switch scheme by promising more product than is actually delivered to unsuspecting consumers.  Accordingly, Plaintiffs seek relief in this action individually, and on behalf of all purchasers of Defendants' Refill Products, for Defendants' violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, New York's Deceptive and Unfair Trade Practices Act, New York General Business Law §§ 349 and 350 ("NYGBL"), North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"), §§ 75-1.1, *et seq.*,  the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-213, the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S.A. §§ 42-110a, *et seq.,* the Magnuson-Moss Warranty Act 15 U.S.C. §§ 2301, *et seq.,* and for breach of express and implied warranties.

## FACTUAL BACKGROUND

### A.     Background On The Diaper Industry

18.     The disposable diaper industry is a booming one.  As of 2020, the "global baby disposable diaper market was valued at around $43 billion," and is expected to "reach a valuation of $60 billion by 2031."[4]  The "[c]onstant need for diapers in a child's life up to a certain age makes this market an evergreen one, with lucrative opportunities for market participants."[5]

---

[4] "Baby Disposable Diaper Market Outlook," Fact.MR, https://www.factmr.com/report/79/baby-disposable-diaper-market (accessed October 20, 2022).

[5] *Id.*

Indeed, "1 in every 3 U.S. families has reported diaper needs," and with "5 million three-year-olds in the United States," the industry's projected expansion is not a shock.

19.     The diaper pail market is a similarly booming industry, "poised to grow by $162.24 million during 2021-2025."[6]  The market is driven by "the competitive pricing of diaper pails, increasing awareness of the importance of maintaining baby hygiene in developing countries, and innovation and portfolio extension leading to product premiumization."[7] Defendant Angelcare is consistently listed as one of "several leading baby diaper pails market vendors," as Defendants' Diaper Genie product line is among the most popular.[8]  Indeed, the front labels of Defendants' Diaper Genie products prominently state that they are the "#1 Selling Diaper Pail Brand."

20.     Defendants are also commonly listed as major players in reports on the diaper disposal bag industry.[9]  And, "the sales for diaper disposal bags are expected to rise in the coming years" to continue the industry's growth trajectory.[10]

---

[6] Business Wire, "Global Baby Diaper Pails Market Report 2021-2025 – Market is Poised to Grow by $150+ Million," https://www.businesswire.com/news/home/20211028005865/en/Global-Baby-Diaper-Pails-Market-Report-2021-2025---Market-is-Poised-to-Grow-by-150-Million---ResearchAndMarkets.com (accessed October 20, 2022).

[7] *Id.*

[8] *Id.*; *see also* Transparency Market Research, "Diaper Pails Market," https://www.transparencymarketresearch.com/diaper-pails-market.html (accessed October 20, 2022).

[9] *See*, *e.g.*, Commerce.Ai, "Diaper Disposal Bags," https://www.commerce.ai/reports/diaper-disposal-bags-diaper-pails-refills-updated-may-2021 (accessed October 20, 2022); *see also* MarketWatch, "Diaper Pail Refill Bags Market Analysis 2022: Global Growth Rate Analysis, Industry Size and Share, Key Trends, and Leading Players Forecast by 2028," https://www.marketwatch.com/press-release/diaper-pail-refill-bags-market-analysis-2022-global-growth-rate-analysis-industry-size-and-share-key-trends-and-leading-players-forecast-by-2028-2022-08-17 (accessed October 20, 2022); Cognitive Market Research, "Global Diaper Pail Refill Bags Market Report 2022," https://www.cognitivemarketresearch.com/diaper-pail-refill-bags-market-report (accessed October 20, 2022).

[10] Commerce.Ai, "Diaper Disposal Bags" (*supra*, n9).

21.     Disposable diapers, as well as the disposal of such diapers, are not cheap.  A common theme running through parent-advice articles is to budget for diapers accordingly, as "parents can expect to shell out a sizable sum over the years" on diapers and their disposal alone.[11]  "The average diaper costs anywhere from $0.20 to $0.30.  Assuming your baby uses 2,500-3,000 diapers in their first year of life, you can expect to spend about $500-$900 on an annual supply."[12]  This estimate "doesn't count the cost of other diapering supplies," such as disposal products, wipes, or a changing table.[13]

22.     Because of the extreme cost of disposable diapers and their associated products, parents and guardians are constantly looking for ways to save money on these products.  Much of the advice given to these consumers is that "[s]tocking up can save you money in the long run," or "[a]s with most things, you can save money by buying diapers in bulk."[14]  This advice translates to products needed in conjunction with disposable diapers, such as diaper pail systems and their associated disposal bags.

### B.     Background On Typical Infant Diaper Usage

23.     Pediatricians, hospitals, and experts agree that babies consume up to 12 diapers a day when they are infants, and will gradually average about 6 diapers a day over the course of a baby's diaper-wearing career. [15]  "Most U.S. parents will go through nearly 3,000 diapers during

---

[11] Harris, Nicole, "Here's How Many Diapers Your Baby Really Needs," Parents.com, https://www.parents.com/parenting/money/saving/save-money-and-build-a-diaper-stockpile/ (accessed January 30, 2023).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] Laura A. Jana, MD, FAAP & Jennifer Shu, MD, FAAP, "Changing Diapers," HealthyChildren.org, https://www.healthychildren.org/English/ages-stages/baby/diapers-clothing/Pages/Changing-Diapers.aspx (accessed October 21, 2022).

their baby's first year alone."[16]  While there appears to be range of estimated diaper usage by experts, the range is universally higher than the numbers budgeted by Defendants' labeling.  For instance, the Icahn School of Medicine at Mount Sinai states that new parents should expect to use between "8 to 10 [diapers] per day."[17]  Kaiser Permanente, which operates one of the largest healthcare plans in the nation, states that parents of infants "should see at least 6 to 10 wet diapers every day," *plus* a few soiled diapers.[18]  According to Johns Hopkins, infant babies "should wet at least six to eight diapers a day," plus a few soiled diapers.[19]  And, according to WebMD, infants should need five or six disposable wet diapers per day, "plus two to five poopy ones each day," for a total of 7 to 11 diapers per day.[20]  Pampers, likely the leading disposable diaper brand in the world, states that "[e]xperts recommend that you change your newborn's diapers every two to three hours," for a total of 8 to 12 diapers a day.[21]  Most magazine and online publications estimate that babies need between 2,500 to 3,000 diapers over the course of the first year.[22]

---

[16] *Id.*

[17] Mount Sinai, "Baby supplies you need," https://www.mountsinai.org/health-library/selfcare-instructions/baby-supplies-you-need (accessed January 30, 2023)

[18] Kaiser Permanente, "Baby's Diapers: What's Normal, What's Not," https://mydoctor.kaiser permanente.org/ncal/article/babys-diapers-whats-normal-whats-not-1213280 (accessed January 30, 2023).

[19] Johns Hopkins Medicine, "Basic Care," https://www.hopkinsmedicine.org/howard_county_ general_hospital/services/mothers_and_babies/taking_baby_home/basic-care.html (accessed January 30, 2023).

[20] Booth, Stephanie, "Is My New Baby Eating Enough?" Grow by WebMD, https://www.webmd.com/parenting/baby/new-baby-eating-enough (accessed January 30, 2023).

[21] Pampers, "How Often Should You Change Your Baby's Diaper?" https://www.pampers.com/ en-us/baby/diapering/article/how-often-to-change-diaper (accessed January 30, 2023).

[22] *See*, *e.g.*, Miller-Wilson, Kate, "How Many Diapers Does a Baby Use in a Year?" *Love to Know*, https://baby.lovetoknow.com/baby-care/how-many-diapers-does-baby-use-year (accessed October 12, 2022); *see also* "How Many Diapers Does A Baby Use In The First Year?" *The*

24.    By infant size, diaper usage is roughly broken down as follows:

| DIAPER SIZE | ESTIMATED AGE BABIES USE THIS SIZE | ESTIMATED DIAPER USE PER DAY |
|---|---|---|
| **0** (Newborn) < 10 lbs | A few weeks | 8 to 12 |
| **1** 8-14 lbs | Until 4 months old | 8 to 10 |
| **2** 12-18 lbs | 3-8 months old | 8 to 9 |
| **3** 16-28 lbs | 5-24 months old | 6 to 7 |
| **4** 22-37 lbs | 18-36 months old | 5 to 7 |

25.    Should a caregiver notice that a baby is going through "fewer than 6 wet diapers in 24 hours after breast milk is in, or after 4 days old," they are instructed to seek medical advice, as this can be a symptom of something sinister.[23]  Indeed, "if your baby does not have many wet diapers, there could be hydration or other medical issues.  A lack of soiled diapers could be anything from simple constipation to other digestive issues.  The amount of soiled or wet diapers can easily be a good indication that your baby is getting enough to eat and drink each day."[24]

26.    It is not recommended to leave babies in soiled diapers, as "[u]rine and bacteria can lead to rashes which are painful and hard to treat."[25]  As a result, parents and guardians are

---

*Suburban Mom*, https://www.thesuburbanmom.com/2014/02/17/how-many-diapers-does-a-baby-use-in-the-first-year/ (accessed October 12, 2022); "How Many Diapers Does a Baby Use?" *Happiest Baby*, https://www.happiestbaby.com/blogs/baby/how-many-diapers-does-baby-use (accessed October 12, 2022); Harris, Nicole, "Here's How Many Diapers Your Baby Really Needs" (*supra* n11).

[23] Kaiser Permanente, "Baby's Diapers: What's Normal, What's Not (*supra* n18).

[24] New Kids-Center, "How Many Diapers Does a Baby Use a Day?" New Kids-Center https://www.newkidscenter.org/how-many-diapers-a-day.html (accessed October 12, 2022).

[25] *Id.*

instructed that "[d]iapers need to be changed as soon as you notice they are soiled," which translates to changing diapers constantly.[26]

27.     One problem that can arise from less frequent diaper changes is diaper dermatitis, or "inflammation of the skin in the diaper area."[27]  While this is a relatively common condition, it "is a condition which causes considerable parental anxiety."[28]  Results from a study examining common causes of diaper dermatitis found that there was a "significant association between reduced frequency of diaper changes and both current and recurrent episodes of diaper dermatitis."[29]

28.     Other common issues that can result from infrequent enough diaper changes can include yeast infections, chafing, bladder infections, and staph infections – all afflictions parents are desperate to help their children avoid.[30]

29.     According to Pampers, "Experts recommend that you change your newborn's diaper every two to three hours, or as often as needed … there are a few health reasons to consider as well: Overtly wet diapers left on too long can contribute to the risk of diaper rash; Poop can irritate your baby's skin; Leftover bacteria may lead to a bladder infection (especially in baby girls)."[31]  And there are other problems to consider, such as the fact that "a soiled diaper

---

[26] *Id.*

[27] Johns Hopkins Medicine, "Diaper Dermatitis," https://www.hopkinsmedicine.org/health/conditions-and-diseases/diaper-dermatitis (accessed October 21, 2022).

[28] Adalat, Shazia et al., "Diaper dermatitis – frequency and contributory factors in hospital attending children," *Pediatric dermatology* vol. 24, 5 (2007).

[29] *Id.*

[30] Wehrli, Ashley, "15 Dangers Of Not Changing Your Baby's Diaper Fast Enough," https://www.babygaga.com/15-dangers-of-not-changing-the-babys-diaper-fast-enough/ (accessed October 21, 2022).

[31] Pampers, "How Often Should You Change Your Baby's Diaper?" (*supra* n21).

can cause leaks, and the mess can spread to your baby's clothes, crib, car seat – you name it! The simplest way to avoid the mess is with frequent diaper changes."[32]

30.     Put simply: frequent diaper changes are crucial to keeping infants healthy. Monitoring diaper change frequency and the conditions of a baby's soiled diaper are key methods to ensuring that a baby is eating and drinking enough, and not falling victim to any of the health issues that can arise from infrequent diaper changes.

31.     The vast majority of parents use far more diapers over the course of a year than would fit into Defendants' Refill Products.  As discussed above, Defendants' labeling states that its "1 YEAR SUPPLY" of Refill Products holds up to 2,160 *newborn* diapers, 1,864 diapers for 8-14 pound babies, 1,526 diapers for 12-18 pound babies, 1,408 diapers for 16-28 pound babies, and 1,152 diapers for 22-37 pound babies.  *See* Table 1.  Because an average baby weighs roughly 20 pounds at one year of age,[33] Defendants' labeling effectively budgets for fitting 1,408 to 2,160 diapers over the course of a baby's first year of life.  But, of course, no baby stays an infant for an entire year.  Indeed, by six months of age, the average baby weighs over 16 pounds, more than double its birth weight.[34]  Thus, Defendants' labeling anticipates that a consumer would only need to dispose of roughly 1,700 diapers, if not less, over the course of a year. Further, Defendants' labeling anticipates that a newborn would need to dispose of less than 6 diapers per day, and that babies weighing as few as 16 pounds (the average weight of a 6-month old) *would need to dispose of less than 4 diapers per day.  See* Table 1.  These figures are so

---

[32] *Id.*

[33] Miles, Karen, "Average weight and growth chart for babies, toddlers, and kids," https://www.babycenter.com/baby/baby-development/average-weight-and-growth-chart-for-babies-toddlers-and-beyo_10357633#average-baby-weight-and-length-chart-by-month (accessed January 30, 2023).

[34] *Id.*

obviously divorced from real life that Defendants knew, on information and belief, that their labeling was false and misleading.

32.     As discussed above, an average baby will need to dispose of roughly twice as many diapers as can physically fit in Defendants' purported "1 YEAR SUPPLY" of Refill Cartridges.  Reasonable consumers do not pull out calculators or conduct medical research in a store aisle to calculate whether Defendants' labeling is true and accurate.  Instead, reasonable consumers rely on Defendants' labeling, expecting to receive a "1 YEAR SUPPLY" of diaper bags.  In practice, consumers receive roughly half of what Defendants' promise and warrant to them on the Products' labeling, thereby losing money both at the initial point of purchase and through having to buy additional diaper disposal products to make up for the amount of Refill Cartridges that Defendants shorted them.

### C.     Online Consumer Complaints About The Refill Products

33.     Defendants' deceptive conduct has drawn the attention and ire of customers across the country, with countless angry consumers taking to the Internet to voice their discontent over Defendants' deception.  For instance, numerous consumers have left scathing reviews on the Refill Products' product page on the Amazon website, complaining about the falsity of Defendants' Duration Claims:[35]



---

[35] *See* https://www.amazon.com/Playtex-Diaper-Genie-Refill-Registry/dp/B0195DPXO0/ ref=cm_cr_arp_d_bdcrb_top?ie=UTF8#customerReviews (accessed October 20, 2022).

 SI

★☆☆☆☆ **At least one does not work in each package.**

Reviewed in the United States on June 11, 2020

Verified Purchase

At least one trash roll does not want to come out of the top of the package correctly. Therefore, you throw it away and only end up with seven instead of eight.

Plus, if you believe these will last a year you are definitely misled! They might last a few months at the most.

 Jessica

★☆☆☆☆ **Not a years supply, that's a joke**

Reviewed in the United States on December 19, 2018

I mean I love these as I have a diaper genie but this is NO WAY near a years supply! Unless your baby goes through like one diaper a day, which lets be real they don't. Product is overall good, just you need to buy more than advertised so be aware of this "great deal".

 Richard

★☆☆☆☆ **Not a one year supply.**

Reviewed in the United States on April 10, 2017

Verified Purchase

Once you consider:

1 - These are more expensive than regular garbage bags.
2 - The diaper genie itself is a specialized trash can that costs far more than a regular trash can and doesn't actually perform better than a trash can for preventing/hiding diaper odors.
3 - Extraordinary creative license was taken in marketing these as a "one year supply," when really they're a two month supply.

If you decide those points above do not matter to you, then these seem really great.

 ronmusto

★☆☆☆☆ **NOT A YEAR SUPPLY**

Reviewed in the United States on December 25, 2021

Verified Purchase

I bought this refill pack in Nov and have already used half of the supply. My baby is in a size 2 diaper and this claims to hold 192 diapers in one refill. IT DOES NOT!!! Also claims to be a year supply which clearly isn't. This get a one star for false advertising

 Frank N

★★☆☆☆ **False advertising. 4 to 5 month supply only.**

Reviewed in the United States on July 16, 2018

Verified Purchase

Purchased the 1 year supply in May for my newborn. It only last 4 months. I wrap every used diaper tightly and compress the bag.

 ivan jackson

★★★☆☆ **NOT a year's supply.**

Reviewed in the United States on December 15, 2019

Verified Purchase

These are great. However, they are definately not a year's supply. I have used half in 2 months.

 Jason

★★★☆☆ **Knocked off a star for the "1 year supply" claim ...**

Reviewed in the United States on August 19, 2016

Verified Purchase

Knocked off a star for the "1 year supply" claim. I'm on my 4th refill set and it hasn't even been half a year. Otherwise, it works as expected.

 Dane reinhardt

★★★☆☆ **Fine but not a year supply not even close**

Reviewed in the United States on May 18, 2021

Verified Purchase

I'll keep buying them but they're definitely over priced and not a year supply. I already bought three packs of the one year supply and my baby is only 10 months old

 Amazon Customer

⭐☆☆☆☆ **One Star**
Reviewed in the United States on December 6, 2016
We have this for our 2 kids and it's been a month and already threw 4 of them. They don't last long at all. A year supplie for one kid so should last 6 months for 2 we will be lucky to get 2 months out of them

 John Rambo

⭐☆☆☆☆ **ripoff**
Reviewed in the United States on October 31, 2018
they only give very small amount plastic bag material in each refill, we got to replace it almost 3x per week, they do this on purpose to get you to buy many refills as plastic bag material is very cheap to make but they purposefully short you on it $$$$$ very expensive cost

 Anika

⭐⭐⭐☆☆ **Works, but not a year supply**
Reviewed in the United States on September 21, 2017
Verified Purchase
Works for what we need it to, but the box says it's a year supply---ours lasted 3 months smashing as many diapers into the bags as we could.

 Adam

⭐⭐☆☆☆ **Liesssssss lasts 2-3 months only**
Reviewed in the United States on January 2, 2018
Verified Purchase
CHEAPER IN TARGET, DOES NOT LAST 1 YEAR. 2-3 MONTHS ONLY!

 kara gifford bayani

⭐⭐⭐☆☆ **Three Stars**
Reviewed in the United States on September 3, 2016
Verified Purchase
Love the diaper genie, but this is not a one year supply. More like at 4-5mo supply.

 fishstix

⭐⭐⭐☆☆ **good product overall**
Reviewed in the United States on June 11, 2017
Verified Purchase
good product overall. though disappointed as on the Box it says 1 Year Supply. Our Baby is not 7 months old yet and we need to re order soon. We make sure we stuff them full before removing the bag from the genie.

 Matt & Michelle Jones

⭐⭐⭐☆☆ **Didn't last a year**
Reviewed in the United States on February 13, 2019
Verified Purchase
Definitely didn't last a year, maybe 6 months. It goes further if you be sure to get all the air out of the bag if you don't mind the smell of poop in your face.

 Sloppy McFloppin

⭐⭐⭐☆☆ **It would be like using one square of toilet paper to wipe with ...**
Reviewed in the United States on December 17, 2017
Verified Purchase
Year supply is very misleading. It would be like using one square of toilet paper to wipe with and nothing more. If your toddler takes dumps like mine, your looking at a few months here. Also, the indicator to let you know that your near the end of the refill arrives quickly, so you'll end up wasting a bit if your not careful. These do not DEODORIZE at all. You end up with plastic bag full of poopy diapers and it smells as bad as it sounds.

 Amazon Customer

⭐⭐⭐☆☆ **Not actually a one year supply**
Reviewed in the United States on September 23, 2017
Verified Purchase
These are a good product but not a one year supply as advertised. We went through the box in about two months.

 Jennifer W.

⭐⭐☆☆☆ **Not a year supply like advertised!**
Reviewed in the United States on June 20, 2018
Verified Purchase
Low rating because it is false advertising saying it's a year supply! I am on my 4th refill from the box, meaning I only have 4 left. Considering i ordered this 3 months ago, it's safe to say the remaining refills won't last me another 9 months to make it to the year mark!

34.     Other consumers of Defendants' Refill Products left similar complaints on the

Refill Products' product page on the Target website, also complaining that Defendants' Duration

Claims are false and misleading:[36]

**Dont waste your money**

 |  Would not recommend

Em C - 1 year ago

So cheaply made. The flaps inside don't open half the time, we have to pull the diapers through the opening from inside the genie and it doesn't hold but 15-20 diapers before you have to change the bag. The genie door doesn't shut all the way either. Only good thing it does is contain smell.

**Only holds 1 days worth of Diapers!**



Newmomma - 1 year ago, Verified purchaser

We had the old model and it held days worth of diapers. The lid finally broke on the old model so we bought this one. We have a newborn and go through a lot of diapers but this model only holds a days worth. The last thing you want to do is change this thing out daily with a newborn. DONT BUY!

**Not a year supply!**



Geeee - 10 months ago

originally posted on Playtex



We bought the year supply pack of refills for our diaper genie and it only lasted 4 months. Good product but definitely doesn't give you as much as they promise. They just set you up to spend more money

**Feels like I can't fit that many**



JaysonsMomma - 8 years ago

originally posted on Playtex



I can never seem to get as many diapers as it says it can hold. But never had one break and spill dirty diapers so thats awesome. They are kind of expensive though

**Used???**



Jrodenk - 2 years ago

I'm confused. Maybe I got a returned one but I bought ours in store and it didn't come with any "expressions prints" and the refill that it comes with only held about 90 diapers before it ran out but it says it holds 270+. The refills I bought on their own got full and cut off like 6 or 7 times before they ran out so clearly the one it came with was short. Overall I don't think the product is bad, I'm just confused as to why it didn't come with the decorative sticker for the outside and why the refill it came with was so short. I didn't plan on using the decorative part so it's not a huge deal but it makes me wonder if they just resold a used one without even checking it. I shouldn't have paid full price for a used product.

---

[36] *See* https://www.target.com/p/diaper-genie-diaper-disposal-pail-system-refills-8pk/-/A-75560622#lnk=sametab (accessed October 20, 2022).

**Don't buy**



⊗ **Would not recommend**

Haeley S - 1 year ago, Verified purchaser

Used this less than a month and hated it! It claims to hold up to 200 diapers but it could barely hold fifty. You have to stuff the diapers in and the kid doesn't always stay shut! It also did a terrible job of keeping the odor in. Do yourself a favor and spend the extra money and buy the ubbi instead.

**These do not last long**



hopelad - 2 years ago

originally posted on Playtex



My husband and I have went through multiple refills, it's very costly and does not last as long as they say. My son was through newborn diapers within the first week, in size 1, then size 2 by 3 months then size 4 by 5 months and we've had to by multiple refills... definitely not worth purchasing when the refills are so expensive

**1 year supply LOL**

★★★☆☆

MomOfTwo - 2 years ago

More like 3 month Supply , and i only put my toddlers Poop diapers in there. And you know they only go once or twice the most a day. I don't know what's the point of this pail anymore it still smells when i walk in the room even with the lid closed correctly my husband is so disgusted , I can't wait for my kids to be potty trained. Half the time put the poop diapers in a plastic bag and walk them out the house. I wish they would fix the problems for the price of the pail and refill bags

35.   Still further consumers report identical problems on the product page for the

Refill Products on the Buy Buy Baby website:[37]

**Good to use but doesn't last a year**

Daniella · 9 months ago

★★★☆☆

The bags are sturdy enough to hold diapers and only broke a few times. But it advertises that it lasts a year but it doesn't even come close. Mine lasted to 4 months. They are great to use. bulk makes sense money wise but wish it actually lasted the time from it advertised.

**does NOT last 1 year, maybe 4 months**

kthouston · 4 years ago

★★★☆☆  ⊘ Recommended

We love this diaper pail brand, and these refills are great. However, The one year supply marketing on this specific product is false! We go through one refill about every day and a half to two days... this lasted us about 4 to 4.5 months. I would still recommend getting this bulk purchase, as it is a better deal than buying the three pack.

---

[37] *See* https://www.buybuybaby.com/store/product/playtex-baby-diaper-genie-refill-8-count/1045712500?keyword=diaper+genie+refill (accessed October 20, 2022).

**only lasts 4 months**

Vash · 9 months ago

★★★★★  ⊘ Not Recommended

Very annoyed that they would advertise it holds up to 270 diapers when it doesn't come close!! Only holds around 40 and lasts 4 months!

**These do not last long**

hopelad · 1 year ago

★★★★★  ⊘ Not Recommended

My husband and I have went through multiple refills, it's very costly and does not last as long as they say. My son was through newborn diapers within the first week, in size 1, then size 2 by 3 months then size 4 by 5 months and we've had to by multiple refills... definitely not worth purchasing when the refills are so expensive

**nowhere close to a year supply**

babymamaA · 9 months ago

★★★★★  ⊘ Recommended

I received the diaper genie and an additional "year supply" of refills. My son is less then 5 months old and we have already finished the 3 refills the diaper genie came with plus the entire box of "year supply" refills. In addition to them not even lasting 6 months there was 1 refill that never had an ending to begin with so the entire roll was wasted from trying to find the end.

**Do the job, but not a year supply**

CourtneyZanolli · 3 years ago

★★★★★  ⊘ Recommended

These do the job and are touted as a "1-year" supply, but this is definitely only enough for 6 months, tops. So I'm not sure how they tested that theory but definitely not a big enough supply for that for the price. Either than that, they do the job as expected.

**Not a one year supply**

boymama · 2 years ago

★★★★★  ⊘ Recommended

I love using my diaper genie and these do a great job of keeping the smell out, however the box says it's a one year supply and each cartridge holds 270 newborn diapers. This is definitely not the case. This box of 8 has lasted us 6, almost 7 months. We just started using size 3 diapers but started using these with newborns and even in the newborn stage, we would have to empty it every other day or so. I'd say each cartridge holds about 180 diapers.. max 200 in the newborn stage. Still worth it in my opinion to not have diapers stinking up the regular trash, but I think the claim of a one year supply is misleading.

**Love these, but 1 YEAR SUPPLY is an overstatement**

PBFarm · 6 years ago

★★★☆☆  ⊘ Recommended

I do love my diaper genie. It's quick and easy to use when my hands are full with the baby and messy diapers. So I would absolutely recommend this product over using a plain old waste paper pail. I have had the diaper genie for 3 and a half months and haven't had to change the filter yet. It never smells unless I stick my face in there. But how long a cartridge lasts or how many diapers fit in there really is an exaggeration. This one year supply has lasted about 4 months. And I have a newborn, so only newborn and size 1 diapers are going in there. One thing you don't ever want to do is try and squeeze too many diapers in the bag, it will burst, and then you are in trouble! So yes, this is a great product, but it will not last you a year. 4 months for a new baby is way more accurate.

36.     And, consumers left identical complaints on the product page for the Refill

Products on the Bed Bath & Beyond website:[38]

**Great product but definitely not a 1 year supply!**

Bec17 · 5 years ago

★★★★☆  ⊘ Recommended

I love this product line.. have two diaper genies and even a litter genie for my cats. My son is almost 19 weeks old and we have one refill left in what is described to be a one year supply! Definitely not...

**Controls odors**

REB345 · 5 years ago

★★★★☆  ⊘ Recommended

This product does what I want, which is contain the diaper odor. However, this is not a one year supply. We got a box on our registry, and it lasted 3 months.

**Do the job, but not a year supply**

CourtneyZanolli · 3 years ago

★★★☆☆  ⊘ Recommended

These do the job and are touted as a "1-year" supply, but this is definitely only enough for 6 months, tops. So I'm not sure how they tested that theory but definitely not a big enough supply for that for the price. Either than that, they do the job as expected.

---

[38] *See* https://www.bedbathandbeyond.com/store/product/playtex-baby-diaper-genie-refill-8-count/1045712500?keyword=diaper-genie-refill (accessed October 20, 2022).

**OK product for the money**

IFIL · 5 years ago

★★★★☆   ⊘ Recommended

The product is great. It does what it suppose to do. However, it does not last nearly
as long as advertised. A full box was told is going to last a year. My daughter is almost
8 months old and we're almost done with a 3rd box already

**No more smelly diapers.**

Mari · 2 years ago

★★★★☆   ⊘ Recommended

Amazing bags, seals the smell of dirty diapers. Buying the big pack saves you the trip
to store every two months. This won't last you a year maybe 6 months. I bought the
three pack and I have a 2 month and already purchased this pack instead. This is a
must. I saved some extra money by using the twenty percent off coupon it was
about ten dollars off the regular price.

37.     The above reviews are just a sampling of numerous negative reviews consumers
have left regarding Defendants' deceptive Duration Claims.  As discussed below, these consumer
complaints underscore the artifice devised and employed by Defendants to lure and deceive
millions of consumers into purchasing significantly less product than they believe they are
paying for.

## JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a)
because this case is a class action where the aggregate claims of all members of the proposed
class are in excess of $5,000,000.00, exclusive of interests and costs, there are over 100 members
of the putative class, and Plaintiffs, as well as most members of the proposed classes, are citizens
of states different from Defendants.

39.     This Court has personal jurisdiction over Defendants because they conduct
substantial business within Connecticut, including the manufacturing, sale, marketing, and

advertising of the Refill Products.  Defendants also maintain their corporate headquarters and principal place of business in this judicial district.

40.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are headquartered in this District.

## PARTIES

### Plaintiff Jessi Davis

41.     Plaintiff Jessi Davis is a citizen and resident of the state of North Carolina.  On or around March 29, 2021, Plaintiff Davis purchased an 8 pack of Defendants' Refill Products for use in her home for approximately $47.99 from a Target store in North Carolina.  Prior to her purchase of Refill Products, Plaintiff Davis reviewed the product's labeling and packaging, saw that the Refill Products would purportedly last through 270 diapers per cartridge and would provide a "1 YEAR SUPPLY." Plaintiff Davis relied on those representations to choose her Refill Products over comparable products.  Plaintiff Davis saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Refill Products would last an entire year.  Plaintiff Davis relied on the representations and warranties that her products would last the duration stated in deciding to purchase her Refill Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased Refill Products on the same terms or would not have purchased the Refill Products at all had she known these representations were not true.  However, Plaintiff Davis remains interested in purchasing Refill Products and would consider Playtex Baby Refill Products in the future if Defendants ensured the products would actually last as long as represented.  In making her purchase, Plaintiff Davis paid a substantial price premium due to the false and misleading Duration Claims.  However, Plaintiff Davis did not receive the benefit of

her bargain because her Refill Products did not, in fact, last for the duration specified and did not provide as much product as advertised.

42.     Plaintiff Davis used her Refill Products as directed by the product's packaging for her newborn baby.  Rather than the one year supply she was promised, Defendants' Refill Cartridges ran out after only 4 months of normal use.

43.     Had Defendants not made the false, misleading, and deceptive representations regarding the Refill Products, Plaintiff would not have been willing to purchase the Products on the same terms, or would not have purchased them at all.  Further, Plaintiff had to purchase additional diaper disposal products after running out of Defendants' Refill Cartridges to make up for the 8 additional months that Defendants shorted her.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Plaintiff Allyson Halperin**

44.     Plaintiff Allyson Halperin is a citizen and resident of the state of Florida.  In or around March 2022, Plaintiff Halperin purchased an 8 pack of Defendants' Refill Products for use in her home from Buy Buy Baby's website while in in Florida.  Prior to her purchase of Refill Products, Plaintiff Halperin reviewed the product's labeling and packaging, saw that the Refill Products would purportedly last through 270 diapers per cartridge and would provide a "1 YEAR SUPPLY."  Plaintiff Halperin relied on those representations to choose her Refill Products over comparable products.  Plaintiff Halperin saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Refill Products would last an entire year.  Plaintiff Halperin relied on the representations and warranties that her products would last the duration stated in deciding to purchase her Refill Products.  Accordingly, these representations and warranties were part of the basis of the

bargain, in that she would not have purchased Refill Products on the same terms or would not have purchased the Refill Products at all had she known these representations were not true. However, Plaintiff Halperin remains interested in purchasing Refill Products and would consider Playtex Baby Refill Products in the future if Defendants ensured the products would actually last as long as represented.  In making her purchase, Plaintiff Halperin paid a substantial price premium due to the false and misleading Duration Claims.  However, Plaintiff Halperin did not receive the benefit of her bargain because her Refill Products did not, in fact, last for the duration specified and did not provide as much product as advertised.

45.     Plaintiff Halperin used her Refill Products as directed by the product's packaging for her newborn baby.  Rather than the one year supply she was promised, Defendants' Refill Cartridges ran out after only 3 months of normal use.

46.     Had Defendants not made the false, misleading, and deceptive representations regarding the Refill Products, Plaintiff would not have been willing to purchase the Products on the same terms, or would not have purchased them at all.  Further, Plaintiff had to purchase additional diaper disposal products after running out of Defendants' Refill Cartridges to make up for the 9 additional months that Defendants shorted her.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Plaintiff Emily Paige Page**

47.     Plaintiff Emily Paige Page is a citizen and resident of the state of California.  In or around April 2021, Plaintiff Page purchased an 8 pack of Defendants' Refill Products for use in her home for approximately $47.99 from an online retailer while in California.  Prior to her purchase of Refill Products, Plaintiff Page reviewed the product's labeling and packaging, saw that the Refill Products would purportedly last through 270 diapers per cartridge and would

provide a "1 YEAR SUPPLY."  Plaintiff Page relied on those representations to choose her Refill Products over comparable products.  Plaintiff Page saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Refill Products would last an entire year.  Plaintiff Page relied on the representations and warranties that her products would last the duration stated in deciding to purchase her Refill Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased Refill Products on the same terms or would not have purchased the Refill Products at all had she known these representations were not true.  However, Plaintiff Page remains interested in purchasing Refill Products and would consider Playtex Baby Refill Products in the future if Defendants ensured the products would actually last as long as represented.  In making her purchase, Plaintiff Page paid a substantial price premium due to the false and misleading Duration Claims.  However, Plaintiff Page did not receive the benefit of her bargain because her Refill Products did not, in fact, last for the duration specified and did not provide as much product as advertised.

48.     Plaintiff Page used her Refill Products as directed by the product's packaging for her 17-month-old baby.  Rather than the one year supply she was promised, Defendants' Refill Cartridges ran out after only received 3 months of normal use.

49.     Had Defendants not made the false, misleading, and deceptive representations regarding the Refill Products, Plaintiff would not have been willing to purchase the Products on the same terms, or would not have purchased them at all.  Further, Plaintiff had to purchase additional diaper disposal products after running out of Defendants' Refill Cartridges to make up for the additional 9 months that Defendants shorted her.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Plaintiff Brianna Aaron**

50.     Plaintiff Brianna Aaron is a citizen and resident of the state of Illinois.  In or around April 2022, Plaintiff Aaron purchased an 8 pack of Defendants' Refill Products for use in her home for approximately $47.99 from Target's online store while in Illinois.  Prior to her purchase of Refill Products, Plaintiff Aaron reviewed the product's labeling and packaging, saw that the Refill Products would purportedly last through 270 diapers per cartridge and would provide a "1 YEAR SUPPLY."  Plaintiff Aaron relied on those representations to choose her Refill Products over comparable products.  Plaintiff Aaron saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Refill Products would last an entire year.  Plaintiff Aaron relied on the representations and warranties that her products would last the duration stated in deciding to purchase her Refill Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased Refill Products on the same terms or would not have purchased the Refill Products at all had she known these representations were not true.  However, Plaintiff Aaron remains interested in purchasing Refill Products and would consider Playtex Baby Refill Products in the future if Defendants ensured the products would actually last as long as represented.  In making her purchase, Plaintiff Aaron paid a substantial price premium due to the false and misleading Duration Claims.  However, Plaintiff Aaron did not receive the benefit of her bargain because her Refill Products did not, in fact, last for the duration specified and did not provide as much product as advertised.

51.     Plaintiff Aaron used her Refill Products as directed by the product's packaging for her 18-month-old baby.  Rather than the one year supply she was promised, Defendants' Refill Cartridges ran out after only a few months of normal use.

52.     Had Defendants not made the false, misleading, and deceptive representations regarding the Refill Products, Plaintiff would not have been willing to purchase the Products on the same terms, or would not have purchased them at all.  Further, Plaintiff had to purchase additional diaper disposal products after running out of Defendants' Refill Cartridges to make up for the additional months that Defendants shorted her.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Plaintiff Leanna Rose**

53.     Plaintiff Leanna Rose is a citizen and resident of the state of New York.  On or around July 9, 2022, Plaintiff Rose purchased an 8 pack of Defendants' Refill Products for use in her home for approximately $47.99 from Amazon's online store while in New York.  Prior to her purchase of Refill Products, Plaintiff Rose reviewed the product's labeling and packaging, saw that the Refill Products would purportedly last through 270 diapers per cartridge, and would provide a "1 YEAR SUPPLY."  Plaintiff Rose relied on those representations to choose her Refill Products over comparable products.  Plaintiff Rose saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Refill Products would last an entire year.  Plaintiff Rose relied on the representations and warranties that her products would last the duration stated in deciding to purchase her Refill Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased Refill Products on the same terms or would not have purchased the Refill Products at all had she known these representations were not true.  However, Plaintiff Rose remains interested in purchasing Refill Products and would consider Playtex Baby Refill Products in the future if Defendants ensured the products would actually last as long as represented.  In making her purchase, Plaintiff Rose paid a substantial price premium due to the

false and misleading Duration Claims.  However, Plaintiff Rose did not receive the benefit of her

bargain because her Refill Products did not, in fact, last for the duration specified and did not

provide as much product as advertised.

54.    Plaintiff Rose used her Refill Products as directed by the product's packaging for

her 2-year-old and 3-year-old babies.  Rather than the one year supply she was promised,

Defendants' Refill Cartridges ran out after only 1 month of normal use.  Considering that

Plaintiff Rose use the Refill Products for two babies, she expected that the Products would last at

least six months, based on Defendants' warranty that the Refill Products would last one year for

one baby.

55.    Had Defendants not made the false, misleading, and deceptive representations

regarding the Refill Products, Plaintiff would not have been willing to purchase the Products on

the same terms, or would not have purchased them at all.  Further, Plaintiff had to purchase

additional diaper disposal products after running out of Defendants' Refill Cartridges to make up

for the additional 11 months (or, in the alternative, 5 additional months since she had two babies)

that Defendants shorted her.  Accordingly, Plaintiff was injured in fact and lost money as a result

of Defendants' improper conduct.

**Plaintiff Ashley Franco**

56.    Plaintiff Ashely Franco is a citizen and resident of the state of Connecticut.  In or

around August 2022, Plaintiff Franco purchased an 8 pack of Defendants' Refill Products for use

in her home from Target's brick and mortar store in West Hartford, Connecticut.  Prior to her

purchase of Refill Products, Plaintiff Franco reviewed the product's labeling and packaging, saw

that the Refill Products would purportedly last through 270 diapers per cartridge, and would

provide a "1 YEAR SUPPLY."  Plaintiff Franco relied on those representations to choose her

Refill Products over comparable products.  Plaintiff Franco saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Refill Products would last an entire year.  Plaintiff Franco relied on the representations and warranties that her products would last the duration stated in deciding to purchase her Refill Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased Refill Products on the same terms or would not have purchased the Refill Products at all had she known these representations were not true.  However, Plaintiff Franco remains interested in purchasing Refill Products and would consider Playtex Baby Refill Products in the future if Defendants ensured the products would actually last as long as represented.  In making her purchase, Plaintiff Franco paid a substantial price premium due to the false and misleading Duration Claims.  However, Plaintiff Franco did not receive the benefit of her bargain because her Refill Products did not, in fact, last for the duration specified and did not provide as much product as advertised.

57. Plaintiff Franco used her Refill Products as directed by the product's packaging for her 3-month-old baby.  Rather than the year supply she was promised, Defendants' Refill Cartridges ran out after less than 1 month of normal use.

58. Had Defendants not made the false, misleading, and deceptive representations regarding the Refill Products, Plaintiff would not have been willing to purchase the Products on the same terms, or would not have purchased them at all.  Further, Plaintiff had to purchase additional diaper disposal products after running out of Defendants' Refill Cartridges to make up for the 11 additional months that Defendants shorted her.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

59.     Defendant Playtex Products, LLC is a domestic corporation with its headquarters and principal place of business located in Shelton, Connecticut.  Playtex Products, LLC conducts business throughout the United States, including this district.  Playtex Products, LLC's line of baby diaper disposal products, including the Refill Products purchased by Plaintiffs and Class Members, are available at retail stores throughout North Carolina, Florida, California, Illinois, New York, Connecticut, and the United States.  Playtex Products' incomplete misleading marketing, advertising, and product information concerning the amount of product provided in each Refill Cartridge was conceived, reviewed, approved, and otherwise controlled from Playtex Products' Connecticut headquarters.  Playtex Products' misleading marketing concerning the product content of its Refill Cartridges was coordinated at, emanated from, and was developed at its Connecticut headquarters.  All critical decisions regarding the misleading Duration Claims were made in Connecticut.  Playtex Products, in concert with Angelcare, is responsible for the misleading and deceptive manufacturing, marketing, advertising, and distributing of the Products during the class period.

60.     Defendant Angelcare USA, LLC is a Delaware corporation with its headquarters and principal place of business located in East Hartford, Connecticut.  Angelcare conducts business throughout the United States, including this district.  Angelcare is a leader in the baby care industry and has more than several well-known brands in its portfolio.  Angelcare developed its diaper pail system in 2005, and partnered with Playtex to market the technology under the Playtex Diaper Genie brand in North America that same year.  Angelcare's assorted lines of baby care products, including the Playtex Baby Refill Products purchased by Plaintiffs and Class Members, are available at retail stores throughout North Carolina, Florida, California, Illinois,

New York, Connecticut, and the United States.  Angelecare's incomplete misleading marketing, advertising, and product information concerning the amount of product provided in each Refill Cartridge was conceived, reviewed, approved, and otherwise controlled from Angelcare's Connecticut headquarters.  Angelcare's misleading marketing concerning the product content of its Refill Cartridges was coordinated at, emanated from, and was developed at its Connecticut headquarters.  All critical decisions regarding the misleading Duration Claims were made in Connecticut.  In concert with Playtex, Defendant created and/or authorized the false, misleading, and deceptive manufacturing, marketing, advertising, and distributing of the Refill Products.

## CLASS ALLEGATIONS

61.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

62.     Plaintiffs seek to represent a class defined as all persons in the United States who, between four years prior to the filing of the original Complaint in this action and the date that class notice is disseminated, purchased Playtex Baby Refill Products (the "Class").  Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

63.     Plaintiff Jessi Davis also seeks to represent a subclass consisting of Class Members who reside in North Carolina (the "North Carolina Subclass").

64.     Plaintiff Allyson Halperin also seeks to represent a subclass consisting of Class Members who reside in Florida (the "Florida Subclass").

65.     Plaintiff Emily Paige Page also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

66.     Plaintiff Brianna Aaron also seeks to represent a subclass consisting of Class Members who reside in Illinois (the "Illinois Subclass").

67.     Plaintiff Leanna Rose also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

68.     Plaintiff Ashley Franco also seeks to represent a subclass consisting of Class Members who reside in Connecticut (the "Connecticut Subclass").

69.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

70.     **Numerosity.**  The Class and Subclasses Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in each Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendants and may be determined through discovery.

71.     **Commonality.**  Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

a.   Whether Defendants made false and/or misleading statements to the consuming public concerning the amount of disposal bags provided by the Refill Products;

b.   Whether Defendants omitted material information to the consuming public concerning the actual amount of disposal bags in the Refill Products;

c.   Whether Defendants' labeling and packaging for the Refill Products is misleading and/or deceptive;

d.   Whether Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Refill Products;

e.   Whether Defendants' representations concerning the Refill Products were likely to deceive a reasonable consumer;

f.   Whether Defendants' omissions concerning the Refill Products were likely to deceive a reasonable consumer;

g.   Whether Defendants represented to consumers that the Refill Products have characteristics, benefits, or qualities that they do not have;

h.   Whether Defendants advertised the Refill Products with the intent to sell them not as advertised;

i.   Whether Defendants falsely advertised the Refill Products;

j.   Whether Defendants made and breached express and/or implied warranties to Plaintiffs and Class and Subclass Members about the Refill Products;

k.   Whether Defendants' representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

l.   Whether Plaintiffs and Class and Subclass Members are entitled to damages.

72.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendants' false and misleading advertising claims about the probable longevity of the Refill Products.  All Class and Subclass Members were comparably injured by Defendants' wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiffs.

73.     **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

74.     **Predominance.**  Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses.  The Class and Subclass issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

75.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the

danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

76.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS
## FIRST CAUSE OF ACTION
## VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT,
## C.G.S.A. §§ 42-110a, *et seq.*
### (On Behalf The Connecticut Subclass)

77.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiff Ashley Franco brings this claim individually and on behalf of the Members of the proposed Connecticut Subclass against Defendants.

79.     Defendants engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of Connecticut Unfair Trade Practices Act, C.G.S.A. §§ 42-110a, *et seq.*, including furnishing their Refill Products with false, misleading, and deceptive representations that the Refill Products could last an entire year when they cannot, and that they could hold up to 270 diapers when that is not true when used in the real world.

80.     Defendants' representations and omissions were material because they violate consumers' reasonable expectations.  Defendants knew consumers would purchase Refill

Products and/or pay more for them under the false – but reasonable – belief that Refill Products would last an entire year, when they cannot.  By advertising so prominently that Refill Products could last up to an entire year, Defendants prove that information about longevity is material to consumers.  If such information were not material, Defendants would not feature it prominently on the front label of every Refill Products package.  As a result of their deceptive acts and practices, Defendants have sold thousands, if not millions, of Refill Products to unsuspecting consumers across Connecticut.  If Defendants had advertised its Refill Products truthfully and in a non-misleading fashion, Plaintiff and other Connecticut Subclass Members would not have purchased them or would not have paid as much as they did for them.

81.     Defendants acted intentionally, knowingly, and maliciously to violate the Connecticut Unfair Trade Practices Act, and recklessly disregard Plaintiff Franco and Connecticut Subclass Members' rights.

82.     As a direct and proximate result of Defendants' deceptive and unlawful acts and practices, Plaintiff Franco and other Members of the Connecticut Subclass have suffered ascertainable loss of money or property, and monetary and non-monetary damages, including time and expenses relating to having to purchase additional Refill Products.

83.     Defendants' deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the thousands of Defendants' Connecticut-based customers.

84.     The above deceptive and unlawful practices and acts by Defendants caused substantial injury to Plaintiff Franco and Connecticut Subclass Members that they could not reasonably avoid.

85.     Plaintiff Franco and Connecticut Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages and equitable relief, including injunctive relief.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK'S GEN. BUS. LAW § 349**
**(On Behalf The New York Subclass)**

86.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

87.     Plaintiff Leanna Rose brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendants.

88.     Defendants committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the longevity of its Refill Products to mislead consumers into believing the Refill Products can last an entire year, and that they could hold up to 270 diapers when that is not true when used in the real world.

89.     Plaintiff Rose has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' deceptive acts and practices.  Specifically, Plaintiff Rose purchased Refill Products for her own personal use in her home.  In doing so, Plaintiff Rose relied upon Defendants' false, misleading, and deceptive representations that the Refill Products could last an entire year, and that they could hold up to 270 diapers per Refill Cartridge.  Plaintiff Rose spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

90.     Defendants' deceptive acts and practices were directed at consumers.

91.     Defendants' deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendants knew consumers would purchase Refill Products and/or pay more for them under the false – but reasonable – belief that Refill

Products can last an entire year, when they cannot.  By advertising so prominently that Refill Products could last an entire year, Defendants prove that information about longevity is material to consumers.  If such information were not material, Defendants would not feature it prominently on the front label of every Refill Products package.  As a result of their deceptive acts and practices, Defendants have sold thousands, if not millions, of Refill Products to unsuspecting consumers across New York.  If Defendants had advertised its Refill Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

92.    As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Rose and other Members of the New York Subclass were injured in that they: (1) paid money for Refill Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Refill Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Refill Products they purchased had less value than Defendants represented.

93.    On behalf of herself and Members of the New York Subclass, Plaintiff Rose seeks to enjoin Defendants' unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### VIOLATION OF NEW YORK'S GEN. BUS. LAW § 350
#### (On Behalf The New York Subclass)

94.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

95.    Plaintiff Leanna Rose brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendants.

96.     Defendants engaged in a campaign of false advertising with regard to the longevity of Refill Products to mislead consumers into believing the Refill Products they purchase last an entire year, and that they could hold up to 270 diapers when that is not true when used in the real world.

97.     Plaintiff Rose has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' deceptive acts and practices.  Specifically, Plaintiff Rose purchased Refill Products for her own personal use in her home.  In doing so, Plaintiff Rose relied upon Defendants' false, misleading, and deceptive representations that the Refill Products last an entire year when they cannot.  Plaintiff Rose spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

98.     Defendants' deceptive acts and practices were directed at consumers.

99.     Defendants' deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendants had advertised its Refill Products truthfully and in a non-misleading fashion, Plaintiff Rose and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

100.     As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Rose and other Members of the New York Subclass were injured in that they: (1) paid money for Refill Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Refill Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Refill Products they purchased had less value than Defendants represented.

101.     On behalf of herself and Members of the New York Subclass, Plaintiff Rose seeks to enjoin Defendants' unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")
## CAL. CIV. CODE §§ 1750, *et seq.*
## (On Behalf Of The California Subclass)

102.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

103.     Plaintiff Emily Paige Page brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendants.

104.     Defendants violated California's Consumers Legal Remedies Act (the "CLRA") by engaging in the following unfair and deceptive business practices, as alleged above and herein:

      a.     Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that the Refill Products have characteristics that they do not have.

      b.     Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Refill Products with the intent not to sell them as advertised.

105.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendants' conduct because the statute covers all sales of goods to consumers.

106.     Plaintiff Page and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendants' Refill Products, Plaintiff Page and other Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

107.    Defendant Playtex Products, LLC is a "person" within the meaning of Cal. Civ. Code § 1761(c).  Defendant's Refill Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

108.    Defendant Angelcare USA, LLC is a "person" within the meaning of Cal. Civ. Code § 1761(c).  Defendant's Refill Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

109.    Defendants' unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Refill Products.

110.    As a direct and proximate result of Defendants' unfair and deceptive business practices, as alleged above and herein, Plaintiff Page and other Members of the California Subclass suffered injury and damages in an amount to be determined at trial.

111.    On information and belief, Defendants' unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

112.    On information and belief, Defendants' officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the Duration Claims of the Refill Products, as alleged above and herein.

113.    On October 18, 2022, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

114.     Plaintiff Page and the California Subclass Members seek damages and to enjoin the unlawful acts and practices described herein.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
**(On Behalf Of The California Subclass)**

115.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

116.     Plaintiff Emily Paige Page brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendants.

117.     Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

118.     Plaintiff Page has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' unlawful, unfair, and fraudulent conduct.  Specifically, Plaintiff Page purchased the Refill Products for her own personal household use.  In doing so, Plaintiff Page relied upon Defendants' false representations that the Refill Products would last an entire year, and that they could hold up to 270 diapers when that is not true when used in the real world.  Plaintiff Page spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

*"Unfair" Prong of the UCL*

119.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm to the alleged victims.

46

120.     Defendants' conduct constitutes an "unfair" business practice because, as alleged herein, Defendants have engaged, and continue to engage, in a false, misleading, and deceptive advertising campaign that misleads consumers into believing that the Refill Products they purchase will last for an entire year, and that they could hold up to 270 diapers when that is not true when used in the real world.

121.     Defendants' conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize its profits at the expense of consumers.  No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendants' conduct on members of the general consuming public. Defendants engaged, and continue to engage, in such conduct solely to wrongfully extract monies from consumers, including Plaintiff Page, to which Defendants are not entitled. Defendants could have, but have not, used alternate means of effecting its legitimate business needs, such as by properly disclosing that the Refill Products will not last for an entire year, or by omitting the claim entirely.

122.     Defendants' conduct harms consumers and hurts market competition. Defendants' conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff Page and Members of the California Subclass because it violates consumers' reasonable expectations.  If Defendants had advertised its Refill Products in a non-misleading fashion, Plaintiff Page and other California Subclass Members could have considered other options for purchasing diaper disposal products.

### *"Fraudulent" Prong of the UCL*

123.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

124.     Defendants have engaged, and continue to engage, in a "fraudulent" business practice by knowingly representing to consumers that the Refill Products they purchase will last for an entire year when they do not, and that they could hold up to 270 diapers when that is not true when used in the real world.  Defendants' conduct deceived Plaintiff Page and other California Subclass Members who purchased the Refill Products in reliance on the Duration Claims, and it is highly likely to deceive members of the consuming public because, as alleged above, it violates consumers' reasonable expectations regarding longevity.  Such a business practice lacks utility and functions only to maximize Defendants' profits at the expense of its customers.  The gravity of the harm to Plaintiff Page and other California Subclass Members, who lost money or property by paying for the Refill Products, far outweighs any benefit of Defendants' conduct.

125.     Further, Defendants' fraudulent business practices will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the longevity of the Refill Products until *after* consumers purchase such products.  Accordingly, the risk of harm to Plaintiff Page, Members of the California Subclass, and the consuming public is ongoing.

### *"Unlawful" Prong of the UCL*

126.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

127.     Defendants' business practices, as alleged herein, constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA"). Specifically, Defendants have unlawfully marketed and advertised its Refill Products in violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(9), as detailed below.

128.    Defendants' business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), as detailed below.

129.    Defendants' unfair, fraudulent, and unlawful business practices, as enumerated and explained above, were the direct and proximate cause of financial injury to Plaintiff Page and other Members of the California Subclass.  Defendants have unjustly benefitted as a result of their wrongful conduct.  Accordingly, Plaintiff Page and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendants to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

### SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*
### (On Behalf Of The California Subclass)

130.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

131.    Plaintiff Emily Paige Page brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendants.

132.    Defendants violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding their Refill Products as alleged above and herein.

133.    Plaintiff Page has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' false advertising. Specifically, Plaintiff Page purchased Refill Products for her own personal household use.  In doing so, Plaintiff Page relied upon Defendants' false, and misleading representations regarding the Refill Products' Duration Claims.  Plaintiff Page spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

134.    Defendants disseminated false and misleading advertisements to increase the sales of their Refill Products.

135.    Defendants knew or should have known that the advertisements for their Refill Products were false and/or misleading.

136.    Defendants knew or should have known that consumers, including Plaintiff Page and other Members of the California Subclass, would believe that the Refill Products would last for an entire year.

137.    Plaintiff Page and Members of the California Subclass have suffered harm as a result of Defendants' violations of the FAL because they paid monies for the Refill Products that they would not have paid but for Defendants' false and misleading advertisements.

138.    Accordingly, Plaintiff Page and Members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendants to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE**
**PRACTICES ACT, §§ 75-1.1, *et seq.***
**(On Behalf Of The North Carolina Subclass)**

139.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

140.    Plaintiff Jessi Davis brings this claim individually and on behalf of the members of the proposed North Carolina Subclass against Defendants.

141.    At all times mentioned herein, Defendants engaged in acts and practices "affecting commerce" in North Carolina, as that term is defined by N.C.G.S. § 75-1.1(b), because Defendants' sale of the Refill Products were business activities.

142.    Defendants have committed unfair and deceptive acts or practices affecting commerce in violation of the UDTPA, namely the sale of the Refill Products to consumers in North Carolina while falsely representing that the Refill Products would provide a "1 YEAR SUPPLY," and failing to disclose that the Refill Products did not contain sufficient disposal product for the Duration Claims advertised.

143.    Defendants' misrepresentations and omissions, as described above, had the tendency to deceive the average consumer, including Plaintiff Davis and Subclass Members.

144.    Defendants' actions were unfair because they offended established public policy and were unscrupulous and substantially injurious to consumers.

145.    Defendants' unfair and deceptive practices were material as they influenced purchasing and payment decisions by Plaintiff Davis and Subclass Members.

146.    Plaintiff Davis and the Subclass have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

147.    Plaintiff Davis and the Subclass are entitled to recovery compensatory damages, treble damages, and reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES**
**ACT, §§ 815 ILCS 505/1, *et seq.***
**(On Behalf Of The Illinois Subclass)**

148.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

149.     Plaintiff Brianna Aaron brings this claim individually and on behalf of Members of the Illinois Subclass against Defendants.

150.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purpose.

151.     Defendants intended that Plaintiff Aaron and each of the other members of the Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

152.     As a result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff Aaron and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

153.     In addition, Defendants' conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

**NINTH CAUSE OF ACTION**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**FLA. STAT. §§ 501.201-213**
**(On Behalf Of The Florida Subclass)**

154.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

155.     Plaintiff Allyson Halperin brings this claim individually and on behalf of the

members of the proposed Florida Subclass against Defendants.

156.    Plaintiff brings this claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

157.    The FDUTPA renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

158.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

159.    While FDUTPA does not define "deceptive," or "unfair," Florida courts have looked to the Federal Trade Commission's interpretations for guidance.  "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (internal quotations and citations omitted).  Courts define a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers.  *Fed. Trade Comm'n v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016).  Courts define an "unfair trade practice" as any act or practice that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injuries to consumers."  *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).

160.    Defendants engaged in a deceptive act and/or unfair trade practice by manufacturing and marketing the Refill Products as purportedly able to provide a year-long

supply of disposal product when the Refill Products cannot last for the advertised Duration

Claims, and that they could hold up to 270 diapers when that is not true when used in the real

world.

161.    Defendants intended that Plaintiff Halperin and the Florida Subclass would rely

upon their deceptive conduct including the sale of the Refill Products, and a reasonable person

would in fact be misled by this deceptive conduct.

162.    Plaintiff Halperin and the members of the Florida Subclass have been damaged by

Defendants' conduct alleged herein because they would not have purchased the Refill Products

but for Defendants' unfair and/or deceptive trade practice.

163.    Therefore, Plaintiff Halperin and members of the Florida Subclass have suffered

injury in fact, including the full price of the Refill Products purchased.

164.    By committing the acts alleged above, Defendants engaged in unconscionable,

deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of

FDUTPA.

165.    Defendants' conduct is substantially injurious to consumers.  Consumers are

purchasing Refill Products, without knowledge that the representation that it provides a "1

YEAR SUPPLY" is false.  This conduct has caused, and continues to cause, substantial injury to

consumers because consumers would not have purchased the Refill Products but for Defendants'

false labeling, advertising, and promotion.  Thus, Plaintiff Halperin and members of the Florida

Subclass have been "aggrieved" (*i.e.*, lost money) as required for FDUTPA standing, and such an

injury is not outweighed by any countervailing benefits to consumers or competition.

166.    Indeed, no benefit to consumers or competition results from Defendants' conduct.

Since consumers reasonably rely on Defendants' representation that its products will contain a

year-long supply, as well as in Defendants' marketing of the Refill Products, consumers could not have reasonably avoided such injury.

167.    Further, Defendants' conduct is ongoing on continuing, such that prospective injunctive relief is necessary.

168.    As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff Halperin and the members of the Florida Subclass have sustained damages in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. §§ 2301, *et seq.***
**(On Behalf The Class and Subclasses)**

169.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

170.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

171.    The Refill Products are consumer products as defined in 15 U.S.C. § 2301(1).

172.    Plaintiffs and members of the Class and Subclasses are consumers as defined in 15 U.S.C. § 2301(3).

173.    Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

174.    In connection with the marketing and sale of the Refill Products, Defendants expressly and impliedly warranted that the Refill Products would purportedly hold 270 diapers and provide a "1 YEAR SUPPLY."  These representations and warranties were false as described above.

175.    By reason of Defendants' breaches of warranties, Defendants violated the statutory rights due Plaintiffs and members of the Class and Subclasses pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and members of the Class and Subclasses.

176.    Plaintiffs and members of the Class and Subclasses were injured as a direct and proximate result of Defendants' breaches because they would not have purchased the Refill Products or would have paid significantly less for them if they knew the Refill Products did not provide a "1 YEAR SUPPLY," and such representations were therefore false and misleading.

## ELEVENTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf The Class and Subclasses)

177.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

178.    Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendants.  The Class will proceed under Connecticut law, while the Subclasses will proceed, in the alternative, according to the state law where the purchases were made.

179.    As the designer, manufacturer, marketer, distributor, and/or seller of the Refill Products, Defendants issued an express warranty by representing to consumers at the point of purchase that the Refill Products would provide a year-long supply, and that they could hold up to 270 diapers when that is not true when used in the real world.  Defendants' representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and Subclasses.

180.     In fact, the Refill Products do not conform to Defendants' Duration Claims because the Refill Products cannot provide a year-long supply of diaper disposal product.  By falsely representing the Refill Products in this way, Defendants breached express warranties.

181.     As a direct and proximate result of Defendants' breach, Plaintiffs and Members of the Class and Subclasses were injured because they: (1) paid money for Refill Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Refill Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Refill Products they purchased had less value than Defendants represented.  Had Defendants not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the Refill Products or would not have paid as much as they did for them.

## TWELFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (On Behalf The Class and Subclasses)

182.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

183.     Plaintiffs bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendants.  The Class will proceed under Connecticut law, while the Subclasses will proceed, in the alternative, according to the state law where the purchases were made.

184.     Defendants routinely engage in the manufacture, distribution, and/or sale of Refill Products and are merchants that deal in such goods or otherwise hold themselves out as having knowledge or skill particular to the practices and goods involved.

185.    Plaintiffs and Members of the Class and Subclasses were consumers who purchased Defendants' Refill Products for the ordinary purpose of such products.  In the alternative, Defendants marketed the Refill Products, and Plaintiffs and Members of the Class and Subclasses purchased the Refill Products, for the specific purpose of obtaining a year's worth of diaper disposal products, but received far less.

186.    By representing that the Refill Products would provide a year-long supply, Defendants impliedly warranted to consumers that the Refill Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

187.    However, the Refill Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

188.    As a direct and proximate result of Defendants' breach, Plaintiffs and Members of the Class and Subclasses were injured because they paid money for Refill Products that would not pass without objection in the trade or industry under the contract description.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendants as follows:

A.    Certifying the nationwide Class, the North Carolina Subclass, the Florida Subclass, the California Subclass, the Illinois Subclass, the New York Subclass, and the Connecticut Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and respective Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

B.      Declaring that Defendants' conduct violates the statutes referenced herein;

C.      Finding in favor of Plaintiffs, the nationwide Class, the North Carolina Subclass, the Florida Subclass, the California Subclass, the Illinois Subclass, the New York Subclass, and the Connecticut Subclass against Defendants on all counts asserted herein;

D.      Ordering Defendants to disgorge and make restitution of all monies Defendants acquired by means of the unlawful practices as set forth herein;

E.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

F.      Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

G.      Ordering Defendants to pay pre-judgment interest on all amounts awarded;

H.      Providing such further relief as may be just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: January 30, 2023                    Respectfully submitted,


**REARDON SCANLON LLP**

By:   */s/ James J. Reardon, Jr.*
        James J. Reardon, Jr. (CT13802)

45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
Email: james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Fax:  (925) 407-2700
Email: ykrivoshey@bursor.com

*Counsel for Plaintiffs and the Class*