### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

---

JESSI DAVIS, ALLYSON HALPERIN,
EMILY PAIGE PAGE, BRIANNA AARON,
LEANNA ROSE, AND ASHLEY FRANCO,
individually and on behalf of themselves and
all others similarly situated,
     *Plaintiffs*,

     v.

ANGELCARE USA, LLC AND PLAYTEX
PRODUCTS, LLC,
     *Defendants*.

No. 3:23-cv-119 (VAB)

---

### RULING AND ORDER ON MOTION TO DISMISS

Jessi Davis, Allyson Halperin, Emily Paige Page, Brianna Aaron, Leanna Rose, and

Ashley Franco (collectively, "Plaintiffs"), individually and on behalf of all others similarly

situated, have sued Angelcare USA, LLC ("Angelcare") and Playtex Products, LLC ("Playtex")

(collectively, "Defendants") for violations of various state statutes related to unfair trade

practices and false advertising; breach of implied and express warranty; and violation of the

Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* Compl. ¶ 17, ECF No. 1 (Jan. 30,

2023) ("Compl.").

Defendants have moved to dismiss the Complaint in its entirety under Federal Rules of

Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6), with prejudice. Mot. to Dismiss, ECF No. 45

(Apr. 24, 2023) ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED in part and DENIED in

part**.

The case will proceed as follows:

Claim One, the Connecticut Unfair Trade Practices Act claim, shall proceed only against Angelcare.

Claims Two and Three, the New York General Business Law § 349, and the New York General Business Law § 350 claims, shall proceed against both Defendants.

 Claim Four, the California Consumer Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*, claim, shall proceed against Angelcare only, and only as to damages against that Defendant.

Claim Five, the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, claim, is dismissed without prejudice.

Count Six, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, claim, is dismissed without prejudice.

Claim Seven, the North Carolina Unfair and Deceptive Practices Act, §§ 75-1.1, *et seq.*, claim, shall proceed against both Defendants.

Claim Eight, the Illinois Consumer Fraud and Deceptive Practices Act, §§ 815 ILCS 505/1, *et seq.*, claim, shall proceed against both Defendants.

Claim Nine, the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213 claim, shall proceed against both Defendants.

Claim Ten, the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, claim, is dismissed with prejudice.

Claim Eleven, the breach of express warranty claim, shall proceed against both Defendants, except as to the proposed Connecticut subclass.

Claim Twelve, the breach of implied warranty claim, is dismissed with prejudice, except as to the proposed North Carolina subclass, whose dismissal shall without prejudice.

Any prayer for injunctive relief is dismissed with prejudice.

Any prayer for equitable relief is dismissed without prejudice.

# I.      FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Allegations

### 1.  The Diaper Genie System

The Diaper Genie is a baby diaper disposal system, consisting of a large plastic container and a lid. Compl. ¶ 2. One of the key benefits of the system is the built-in bag disposal and sealing mechanism, which allows the user to easily swap bags of soiled diapers without having to replace the plastic bag each time, as would be required with a traditional trashcan. *Id.* This system requires a refill cartridge, which consists of a plastic ring that releases a continuous plastic bag that can be sealed and cut off when the Diaper Genie is full of diapers. *Id.* At that point, the user can dispense more plastic from the refill cartridge to form another bag. *Id.*

### 2.  The Refill Cartridge Packages

Refill cartridges are sold in packs of one through eight. *Id.* ¶ 9. Each of these refill packages contains a statement regarding the number of diapers that the cartridges in the package will hold. *Id.* ¶¶ 10–11. These claims are based on the assumption that a single refill cartridge can hold up to 270 diapers. *Id.* (for example, the single cartridge package states "holds up to 270** diapers"; the three cartridge package states, "Holds Up To 810* Diapers"; and the eight cartridge package states, "EACH REFILL HOLDS UP TO 270** DIAPERS"). On each package, these claims are accompanied by one or two asterisks, which correspond to a disclaimer printed on the bottom of the package, clarifying that a single refill cartridge can hold 270 newborn size diapers. Mem. in Support of Mot. to Dismiss at 30, ECF No. 45-1 ("Mem.").[1] The

---

[1] Where ECF-generated page numbers differ from internal page numbers, the ECF-generated page numbers are used.

side panel of the packages also contains a chart, which specifies the number of diapers of various sizes that a single refill cartridge can accommodate, based on the weight of the child (*e.g.*, the package indicates that a single refill cartridge can only accommodate 107 diapers for a child over 27 pounds). Compl. ¶ 13.

The package with eight refill cartridges states that it contains a "1 YEAR SUPPLY[.]" *Id.* ¶ 10. This claim is on a different part of the label as the claim regarding the number of diapers that a single refill cartridge can hold. Pl. Opp'n to Defs.' Mot. to Dismiss at 12, ECF No. 46 (June 23, 2023) ("Opp'n"). The one-year claim does not contain any asterisk, arrow, or other indication that it is meant to be read with a disclaimer. *Id.*

The package allegedly does not contain a one-year supply of diapers. Compl. ¶ 14. According to the claims printed on the package (that each cartridge can hold up to 270 newborn diapers), if it were to last the entire year, the eight-pack of refill cartridges would only be able to accommodate 5.92 newborn diapers per day or 2.35 diapers per day for babies over 27 pounds. *Id.* According to various experts, including academics and pediatricians, most babies allegedly would require roughly twice as many diapers as Defendants have budgeted to make these claims. *Id.* ¶ 15.

Defendants' labeling allegedly is false and misleading: because babies do not remain infants for an entire year, Plaintiffs allege that the eight-pack of refill cartridges could never, in practice, hold the number of diapers advertised (since, as the baby grows and their diapers get larger, each refill cartridge would be able to hold fewer diapers). *Id.* ¶ 31. Plaintiffs also allege that the one-year claim is similarly false, since the eight-pack could never hold enough diapers to last a parent an entire year, assuming that their baby was being changed a healthy amount. *Id.*

Consumers allegedly rely on Defendants' labeling to make decisions about what product

to purchase. When they receive less than what Defendants promise and warrant on the product label, they allegedly lose money at the initial point of purchase and through having to buy additional diaper disposal products to compensate for the shortfall. *Id.* ¶ 32.

### 3. Plaintiffs

Jessi Davis is a citizen and resident of North Carolina, who allegedly purchased an eight-pack of the refill cartridges for approximately $47.99 from a Target store on or around March 29, 2021. *Id.* ¶ 41. When considering her options and ultimately purchasing the refill cartridges, Davis allegedly relied upon the representations on the packaging about the number of diapers that would fit in each cartridge, as well as the one-year supply claim. *Id.* Davis allegedly would not have purchased the product if she had known that these representations were not true. *Id.* The refill product allegedly lasted Davis for only four months of normal use. *Id.* ¶ 42.

Allyson Halperin is a citizen and resident of Florida, who allegedly purchased an eight-pack of the refill products from Buy Buy Baby's website in or around March 2022. *Id.* ¶ 44. When considering her options and ultimately purchasing the refill cartridges, Halperin allegedly relied upon the representations on the packaging about the number of diapers that would fit in each cartridge, as well as the one-year supply claim. *Id.* Halperin allegedly would not have purchased the product if she had known that these representations were not true. *Id.* Following the instructions on the product's packaging, the refill product allegedly lasted Halperin for only three months. *Id.* ¶ 45.

Emily Paige Page is a citizen and resident of California, who allegedly purchased an eight-pack of the refill products for approximately $47.99 from an online retailer in or around April 2021. *Id.* ¶ 47. When considering her options and ultimately purchasing the refill cartridges, Page allegedly relied upon the representations on the packaging about the number of

diapers that would fit in each cartridge, as well as the one-year supply claim. *Id.* Page allegedly would not have purchased the product if she had known that these representations were not true. *Id.* The refill product allegedly lasted Page for only three months of normal use. *Id.* ¶ 48.

Brianna Aaron is a citizen and resident of Illinois, who allegedly purchased an eight-pack of the refill products for approximately $47.99 from Target's online store in or around April 2021. *Id.* ¶ 50. When considering her options and ultimately purchasing the refill cartridges, Aaron allegedly relied upon the representations on the packaging about the number of diapers that would fit in each cartridge, as well as the one-year supply claim. *Id.* Aaron allegedly would not have purchased the product if she had known that these representations were not true. *Id.* When using the product as directed by the packaging for her 18-month-old child, the refill product allegedly lasted Aaron only a few months. *Id.* ¶ 51.

Leanna Rose is a citizen and resident of New York, who allegedly purchased an eight-pack of the refill products for approximately $47.99 from Amazon's online store on or around July 9, 2022. *Id.* ¶ 53. When considering her options and ultimately purchasing the refill cartridges, Rose allegedly relied upon the representations on the packaging about the number of diapers that would fit in each cartridge, as well as the one-year supply claim. *Id.* Rose allegedly would not have purchased the product if she had known that these representations were not true. *Id.* When using the product as directed by the packaging for her 2- and 3-year-old children, the refill product allegedly lasted Rose for only one month. *Id.* ¶ 54.

Ashley Franco is a citizen and resident of Connecticut, who allegedly purchased an eight-pack of the refill products at the Target store in West Hartford in or around August 2022. *Id.* ¶ 56. When considering her options and ultimately purchasing the refill cartridges, Franco allegedly relied upon the representations on the packaging about the number of diapers that

would fit in each cartridge, as well as the one-year supply claim. *Id.* Franco allegedly would not have purchased the product if she had known that these representations were not true. *Id.* When using the product as directed by the packaging for her 3-month-old child, the refill product allegedly lasted Franco for less than one month. *Id.* ¶ 57.

### 4. The Class

Plaintiffs seek to represent a class defined as all persons in the United States who purchased Playtex Baby Genie refill products between four years prior to the filing of the Complaint and the date that the class notice was disseminated. *Id.* ¶ 62.

Davis also seeks to represent a subclass consisting of class members who reside in North Carolina ("North Carolina subclass"). *Id.* ¶ 63.

Halperin also seeks to represent a subclass consisting of class members who reside in Florida ("Florida subclass"). *Id.* ¶ 64.

Page also seeks to represent a subclass consisting of class members who reside in California ("California subclass"). *Id.* ¶ 65.

Aaron also seeks to represent a subclass consisting of class members who reside in Illinois ("Illinois subclass"). *Id.* ¶ 66.

Rose also seeks to represent a subclass consisting of class members who reside in New York ("New York subclass"). *Id.* ¶ 67.

Franco also seeks to represent a subclass consisting of class members who reside in Connecticut ("Connecticut subclass"). *Id.* ¶ 68.

### 5. Defendants

Playtex is a corporation with its headquarters and principal place of business in Shelton, Connecticut. *Id.* ¶ 59. Playtex has a line of baby diaper disposal products, including the refill

cartridge products purchased by Plaintiffs and class members, that are available throughout the United States, including North Carolina, Florida, California, Illinois, New York, and Connecticut. *Id.* Playtex, together with co-Defendant Angelcare, allegedly is responsible for the misleading and deceptive manufacturing, marketing, advertising, and distributing of the refill products during the class period. *Id.* All activities related to the marketing, advertising, and product information for the refill cartridges allegedly took place in Connecticut. *Id.*

Angelcare is a Delaware corporation with its headquarters and principal place of business in East Hartford, Connecticut. *Id.* ¶ 60. Angelcare is a leader in the baby care industry, developed its diaper pail system in 2005, and partnered with Playtex to market the technology under the Playtex Diaper Genie brand that same year. *Id.* Angelcare's products, including the refill cartridge products purchased by Plaintiffs and class members, that are available throughout the United States, including North Carolina, Florida, California, Illinois, New York, and Connecticut. *Id.* Angelcare, together with co-Defendant Playtex, allegedly is responsible for the misleading and deceptive manufacturing, marketing, advertising, and distributing of the refill products during the class period. *Id.* All activities related to the marketing, advertising, and product information for the refill cartridges allegedly took place in Connecticut. *Id.*

B. Procedural History

On January 30, 2023, Plaintiffs filed the Complaint. Compl.

On April 24, 2023, Defendants filed a motion to dismiss. Mot.; Mem.

On June 23, 2023, Plaintiffs filed a memorandum in opposition to the motion to dismiss. Opp'n.

On July 14, 2023, Defendants filed a reply to Plaintiffs' response to the motion to dismiss. Reply to Response to Mot. to Dismiss, ECF No. 47 (July 14, 2023) ("Reply").

II.     **STANDARD OF REVIEW**

A.   Federal Rule of Civil Procedure 8

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

B.   Federal Rule of Civil Procedure 9(b)

A plaintiff alleging statutory or common law fraud must also comply with Federal Rule of Civil Procedure 9(b), which requires a party to state the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b). "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("[T]he 'complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989))). Although a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendants had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (holding that an inference of scienter must be supported by "ample factual basis").

      C.   <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court also may resolve disputed jurisdictional fact issues, however, "by referring to evidence

outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."

*Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

     D.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

     Any claim that fails "to state a claim upon which relief can be granted" will be dismissed.

Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), courts apply a

"plausibility standard" guided by "[t]wo working principles." *Iqbal*, 556 U.S. at 678.

     First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*; *see also Twombly*, 550 U.S. at 555 ("While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." (internal citations omitted)). Second, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the

complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records*

*LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546

(2d Cir. 2009)).

     When reviewing a complaint under Rule 12(b)(6), the court takes all factual allegations in

the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light

most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C.*

*Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of*

*New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim,

we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's

allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Plaintiffs assert claims under the unfair trade practices and/or false advertising statutes of Connecticut, New York, Illinois, Florida, California, and North Carolina, as well as claims of breach of implied and express warranty, and claims under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* Compl. ¶ 17.

Defendants have moved to dismiss all counts of the Complaint under Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6). Mot. at 2. They argue that: (1) no reasonable consumer would be misled by the representations on the refill products' packaging; (2) Plaintiffs cannot establish actual damages, actual injury, or an ascertainable loss; (3) Plaintiffs have not pled facts sufficient to establish causation; (4) Plaintiffs' express warranty claims fail because Defendants made no actionable affirmation or promise and because there was no privity between Plaintiffs and Defendants; (5) Plaintiffs' implied warranty claims fail because the refill products were fit for their ordinary purpose and because there was no privity between Plaintiffs and Defendants; (6) the MMWA claim fails for lack of subject matter jurisdiction and because

Plaintiffs' predicate state-law warranty claims fail; (7) Plaintiffs have failed to meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b); (8) Plaintiffs' claims against Playtex under the Connecticut Unfair Trade Practices Act ("CUTPA"), the New York General Business Law ("GBL"), the California Consumer Legal Remedies Act ("CLRA"), the California False Advertising Law ("FAL"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") are barred by the three-year statutes of limitations; and (9) Plaintiffs' claims for equitable or declaratory relief fail because they have not demonstrated standing or a lack of adequate legal remedy.

For the sake of clarity, the Court addresses each of Plaintiffs' claims in turn, covering all of Defendants' arguments relevant to a given claim before proceeding to the next.

### A. State Claims

Defendants have raised three broad arguments against Plaintiffs' state law claims: (1) the claims are time-barred against Playtex;[2] (2) Plaintiffs have failed to adequately plead various elements of their claims (including actual injury, causation, and fraud or mistake under Federal Rule of Civil Procedure 9(b)); and (3) the claims fail as a matter of law because no reasonable customer would have been misled by the representations on the refill products' packaging.

The Court first summarizes the parties' general arguments regarding each topic. Next, because arguments related to each claim must be analyzed under a different body of caselaw,[3]

---

[2] Defendants challenge the timeliness of claims under CUTPA, NYGBL, CLRA, FAL, and ICFA as against Playtex. Mem. at 57–58. They do not raise a statute of limitation issue as to Plaintiffs' other state statutory claims, nor do they challenge the timeliness of any state law claims against Angelcare.

[3] The Court analyzes each state law claim—brought on behalf of the subclass located and injured in that state— under the caselaw of that state. To the extent that Defendants suggest that Connecticut or Second Circuit law should be applied to claims brought under other states' consumer protection statutes, such an argument is unavailing. *See, e.g.*, *Mantikas v. Kellogg Company*, 910 F.3d 633, 636–37 (2d Cir. 2018) (analyzing plaintiffs' claims for false advertising and deceptive business practices under New York and California consumer protection laws by applying New York and California caselaw, respectively); *Akes v. Beiersdorf, Inc.*, Civil No. 3:22-cv-869 (JBA), 2023 WL 5000434, at *2–5 (D. Conn. Aug. 4, 2023) (applying California caselaw to analyze claims brought under the UCL,

the Court addresses each state law claim in turn, setting forth the relevant legal standards and analyzing all of the parties' related arguments. For each claim, the Court first addresses the threshold issue of timeliness; next, the Court assesses whether Plaintiffs have sufficiently pled the necessary elements of a given state law claim; finally, assuming that they have, the Court addresses whether, under the relevant caselaw, Plaintiffs have stated a claim upon which relief can be granted.

### 1.   General Arguments[4]

#### a.   Statute of Limitations

Defendants argue that claims brought against Playtex under CUTPA, NYGBL, CLRA, FAL, and ICFA (Counts 1–4, 6, and 8) must be dismissed because they are all subject to a three-year statute of limitations. Mem. at 57. Defendants note that Plaintiffs seek to represent a class consisting of individuals who purchased Diaper Genie refill products up to four years prior to the filing of the Complaint on January 30, 2023, establishing a purchase cutoff date of January 30, 2019. *Id.* Because of the three-year statutes of limitations for claims under these state statutes, however, Defendants argue that the purchase cutoff date should actually be one year later, on January 30, 2020. *Id.* Because Playtex sold the Diaper Genie product line to Angelcare on December 17, 2019, and thereafter stopped selling Diaper Genie products, Defendants argue that any claims against Playtex under these statutes are necessarily time-barred. *Id.* at 58.

Plaintiffs respond that their claims under NYGBL, CLRA, FAL, and ICFA can proceed under the delayed discovery rule, which tolls the statute of limitations until the plaintiff knows of

---

FAL, and CLRA); *Dorris v. Danone Waters of Am.*, No. 22 Civ. 8717 (NSR), 2024 WL 112843, at *3–8 (S.D.N.Y. Jan. 10, 2024) (applying New York, Massachusetts, and California law to claims brought on behalf of citizens of each state under their respective consumer protection statutes).

[4] Defendants raise some arguments only as to certain claims, but they do not always specify which ones. For the sake of clarity, the Court addresses each argument as to each claim.

the existence and cause of his injury. Opp'n at 49. Plaintiffs concede that this rule does not apply

to CUTPA, *id.*, and therefore presumably withdraw their claim against Playtex on behalf of the

Connecticut subclass. With regard to their other claims, however, Plaintiffs argue that they had

no reason to know that the one-year supply claim was false until they had used the refill product

for several months, when it became clear that the product would not last for the entire year. *Id.* at

50. Under the delayed discovery rule, then, they argue that the statute of limitations should have

been tolled for at least a few months. *Id.* Given this delayed accrual of Plaintiffs' claims,

Plaintiffs argue that class members should still be able to make claims against Playtex,

notwithstanding the three-year statute of limitations. *Id.* Plaintiffs also argue that the question of

when a reasonable individual would realize that the refill product could not last an entire year is

a question of fact that cannot be resolved at this stage of the case. *Id.*

        In their reply, Defendants argue that Plaintiffs have not pled the facts necessary to invoke

the delayed discovery rule. Reply at 36–37. In their view, these facts generally include: (1) the

time and manner of the plaintiff's discovery of the alleged deception, and (2) the plaintiff's

inability to have discovered the alleged deception earlier, despite reasonable diligence. *Id.* at 37.

Defendants disagree that the date of discovery can create a factual issue here, since, in their

view, Plaintiffs have not alleged facts sufficient to invoke the delayed discovery rule at all. *Id.*

                    b.   Sufficiency of the Pleadings

         Defendants argue that all of Plaintiffs' claims under the various state consumer

protection statutes fail because Plaintiffs have failed to meet the pleading requirements for such

claims.

                    i.   Actual Damages

        Defendants claim that Plaintiffs have not pled facts sufficient to establish actual damages,

actual injury, or an ascertainable loss because: (1) they "received exactly what they bargained for: Refill Products capable of holding up to 270 soiled diapers per cartridge[,]" and (2) "they have not pled facts to demonstrate that they overpaid, or paid more than they otherwise would have, for the Refill Products" because of the claims on the packaging. Mem. at 42–43. Because Plaintiffs have not alleged that the product they received was ineffective for its intended use or inferior to any alternative product, and because the bulk refill cartridge package, in fact, contained cartridges at a lower price than they would have cost if purchased individually, Defendants argue that Plaintiffs suffered no identifiable loss as a result of the allegedly deceptive claims. *Id.* at 45.

Plaintiffs respond that their "allegations of damages are more than sufficient." Opp'n at 30. Because they have alleged that they purchased the refill products based on a claim that was both not true and misleading—that the products would last for a year—and because Defendants charged a price premium for that statement, Plaintiffs argue that they have alleged an injury sufficient to meet the pleading requirement at this stage of the case. *Id.* at 33. Plaintiffs also note that they have alleged two additional theories of damages beyond the "price premium" injury addressed by Defendants: (1) an "underfill" theory of injury, in which damages are calculated by comparing the amount of product promised with the amount of product actually provided, and then multiplying that difference by the unit retail price; and (2) injury stemming from Plaintiffs' need to purchase additional diaper pail products to compensate for the shortfall resulting from the allegedly misleading statements. *Id.* at 33–34.

Defendants reply that Plaintiffs "got what they paid for: eight refill cartridges, each capable of holding up to 270 diapers, for a total of 2160 diapers." Reply at 23. Defendants further argue that, in order to sustain a price premium theory of damages, Plaintiffs would have

had to plead more specific facts than they included in the Complaint, *e.g.*, the prices of similar products. *Id.* at 24. Defendants maintain that Plaintiffs did not pay a price premium for the eight-pack of refill cartridges because the price per cartridge was (and remains) less than if Plaintiffs had purchased the refill cartridges individually. *Id.* at 24–25. Finally, Defendants argue that the underfill and replacement product theory of damages are unavailing because they are predicated on Plaintiffs' unreasonable reading of the one-year claim, which they maintain was not a misleading representation. *Id.* at 25.

ii.   Causation

Defendants argue that Plaintiffs have not adequately pled facts illustrating a causal connection between the alleged misrepresentations by Defendants and their alleged injuries. Mem. at 45. Although Plaintiffs allege that they relied upon Defendants' one-year and capacity-related claims when deciding whether to purchase the refill products, Defendants maintain that they have not provided any specific and relevant factual background about when or where they saw the allegedly deceptive statements before making their purchases. *Id.* at 46.

Plaintiffs respond that some of the state law claims do not require them to plead reliance on the allegedly false representations (citing New York GBL §§ 349, 350), but, in any event, they argue that the Complaint "more than adequately alleged reliance and that they saw the representation at issue prior to purchase." Opp'n at 35. Plaintiffs emphasize that each named Plaintiff alleged the approximate month and year when they purchased the refill products; identified the store or website where they purchased the products; stated that they saw the allegedly false representations prior to purchasing; and stated that they relied on those representations to choose the refill products over comparable products. *Id.*

In reply, Defendants maintain that plaintiffs must plead "where, when and how" they

17

came to view the allegedly deceptive statements. Reply at 25 (citing *Oden v. Bos. Sci Corp.*, 330

F. Supp. 3d 877, 895 (E.D.N.Y. 2018)). They argue that four of the six named Plaintiffs allege

that they purchased the product online, and that it is unclear from their allegations whether they

viewed photos of the packaging online, or whether they relied upon statements on the retailers'

websites characterizing or paraphrasing the labeling claims. *Id.* at 25–26. The factual background

provided by Plaintiffs' Complaint is therefore, in their view, "simply lacking." *Id.* at 26.

### iii. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for

claims based on allegedly fraudulent conduct. Rule 9(b) states that, "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Defendants argue that Rule 9(b) applies to the subset of Plaintiffs' state law claims sounding in

fraud.[5] Mem. at 54–55. Under Rule 9(b), they claim, Plaintiffs must plead events giving rise to a

strong inference that Defendants had the requisite intent to defraud, knowledge of falsity, or a

reckless disregard for the truth. *Id.* at 55 (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353,

359 (2d Cir. 2013)). In Defendants' view, Plaintiffs have not met that bar because their

allegations of fraudulent intent are conclusory and simply state that Defendants had the requisite

fraudulent intent "on information and belief," rather than alleging facts that would support such

an allegation. *Id.* at 55–56. General corporate profit motive or a motive to satisfy consumers'

desires, they emphasize, is not sufficient to support a strong inference of fraudulent intent. *Id.* at

57. Finally, Defendants argue that the alleged falsity of the labeling statements, based on

---

[5] Defendants do not specify to which claims this argument applies. In the subsequent discussion, however, they
mention CUTPA, the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), the CLRA, the FAL,
the ICFA, and California Unfair Competition Law ("UCL").

Plaintiffs' assumptions and incorrect calculations, cannot suffice to evince fraudulent intent. *Id.* at 56.

Plaintiffs contest Defendants' choice of law regarding the appropriate pleading standard claims brought under other states' laws. Opp'n at 42. While Defendants appear to have applied the caselaw from a given state when determining the pleading standard for claims brought under that state's statute, Plaintiffs argue that this Court is bound by Second Circuit caselaw regarding the pleading standard for claims based in fraud. *Id.* Because the Second Circuit has held that Rule 9(b) does not apply to GBL § 349, *see Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017), Plaintiffs argue that Rule 9(b)'s heightened pleading standard "should not apply to any of Plaintiffs' consumer protection statutes, regardless of the pleading standard applied to those claims in other circuits." *Id.* at 42, 45.

Plaintiffs draw a distinction between the statutory claims they advanced in the Complaint and the fraud-based claims that would be subject to Rule 9(b). *Id.* at 42 ("Notably, here, Plaintiffs do not even plead a stand-alone cause of action for fraud and the action does not 'sound in' fraud."). Plaintiffs further argue that, even if they are required to meet Rule 9(b)'s pleading standard, they have met their burden because scienter may be pled generally, and "[a]ll that is required under Rule 9(b) is that there exist[s] a minimal factual basis for . . . conclusory allegations of scienter." *Id.* at 44 (quoting *In re Livent, Inc. Securities Lit.*, 78 F. Supp. 2d 194, 214 (S.D.N.Y. 1999)). Plaintiffs maintain that they have alleged circumstantial evidence to demonstrate that Defendants knew their claims were false, including the opinions of experts, academics, and pediatricians that Defendants' one-year supply claims could not plausibly be true, and the numerous customer reviews stating that the refill products did not last a full year. *Id.* at 46.

Defendants reply that Plaintiffs misread a single case—*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)—to generally indicate that federal courts should not apply Rule 9(b) to claims brought under consumer protection statutes. Reply at 32. They instead contend that district courts routinely apply Rule 9(b) to consumer protection claims when they are grounded in fraud. *Id.* Because "Plaintiffs allege that Defendants engage in intentional deception via untrue and misleading statements of material facts with the purpose of inducing reliance," Defendants argue that their claims are "classic fraud allegation[s]" subject to Rule 9(b). *Id.* at 34–35. Finally, Defendants disagree with Plaintiffs' assertion that scienter may be pled generally; Defendants instead contend that scienter may be pled generally under Rule 9(b) "***only if*** supported by factual allegations creating a strong inference of fraudulent intent, knowledge of falsity, or reckless disregard for the truth." *Id.* at 35 (emphasis in original). The alleged fact that "lucrative opportunities existed in the diaper market, implying that Defendants had a profit motive[,]" they argue, is insufficient to allow an inference of scienter or fraudulent intent under the relevant case law. *Id.* at 35–36 (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)).[6]

### c.   Failure to State a Claim

Defendants' primary argument is that all counts of Plaintiffs' Complaint fail to state a claim upon which relief can be granted because no reasonable consumer would be deceived by

---

[6] As addressed in greater depth in the sections below, the requirement that scienter be pled with factual specificity is not universal. Defendants cite only New York and Second Circuit cases to support their argument; however, these cases are inapplicable here, since claims under GBL §§ 349 and 350 are not subject to Rule 9(b). *See Greene*, 262 F. Supp. 3d at 67 ("Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)"). Other states have their own pleading standards for fraudulent intent under Rule 9(b); where relevant, these standards are addressed below.

Defendants' claims.[7] Mem. at 23–24. Defendants argue that it is appropriate for the Court to make such a determination as a matter of law because Plaintiffs have not plausibly alleged that a significant portion of the general consuming public, acting reasonably under the circumstances, could be misled. *Id.*

As to the up-to-270 claim, Defendants argue that: (1) the "up to" language clearly communicated a ceiling, not a floor, for the number of diapers that could fit into a single refill cartridge; and (2) a reasonable consumer would not ignore the disclaimers on the box, which specified that the 270 number applied only to newborn diapers. Mem. at 24–34.

As to the one-year supply claim, Defendants argue that Plaintiffs' "theory of deception" relies on "unreasonable and patently implausible assumptions" that this Court should reject as a matter of law. *Id.* at 34. Defendants argue that Plaintiffs' calculations, which purportedly prove that the one-year supply claim is false, unreasonably assume that "every single dirty diaper a parent throws away for an entire year" will be disposed in the Diaper Genie. *Id.* Defendants contend that this theory rests on the unreasonable assumption that the child is not in daycare, does not spend significant time at family members' or friends' houses, and that the family does not go on outings or vacations outside of the home. *Id.* at 34–35.

Defendants also argue that it is unreasonable to read the one-year supply claim in isolation, and that the claim would not deceive a reasonable consumer if read in the context of the entire label, which specifies the number of diapers of various sizes that would fit into a single refill cartridge and clearly indicates to a reasonable consumer that the amount of time it would take to exhaust a refill cartridge would depend on a number of factors specific to their individual

---

[7] While Defendants present the argument in terms of the reasonable consumer test, not all states apply this standard to claims under their consumer protection or false advertising statutes. Accordingly, the Court broadly construes Defendants' argument to assert that Plaintiffs have generally failed to state a claim upon which relief could be granted, under Federal Rule of Civil Procedure 12(b)(6).

circumstances. *Id.* at 37–38. The one-year supply claim was placed in close proximity to the up-to-270 diaper claim, Defendants emphasize, "because they are meant to be read in conjunction." *Id.* at 38.

Plaintiffs respond that the question of whether a reasonable consumer would be misled by Defendants' claims is a question of fact that cannot and should not be resolved on this motion. Opp'n at 18. Under the relevant caselaw across various circuits, Plaintiffs argue that such a factual inquiry—weighing various potential interpretations of allegedly misleading statements—is generally not appropriate for resolution on the pleadings. *Id.* at 20. Plaintiffs additionally argue that the question of whether a reasonable consumer would expect to dispose a significant percentage of their child's diapers elsewhere is also one of fact, which the Court cannot resolve at this stage. *Id.* at 21. They emphasize that the one-year supply claim is not accompanied by any modifiers or disclaimers (such as the "up to" language that accompanies the up-to-270 diaper claim). *Id.* at 24–25. Plaintiffs contest that the one-year-supply claim would reasonably be read in the context of other statements on the packaging, as claimed by Defendants, given that it appears on a different part of the label than the other statements and against a different color background. *Id.* at 26. Finally, Plaintiffs argue that the statements "holds up to 270 diapers" or "hold up to 2160 diapers" cannot provide clarifying context for the one-year-supply claim because such numbers are not "intrinsically meaningful metric[s] of quantity" that a typical consumer would understand or be able to translate into a duration. *Id.* at 27.

Defendants reply that the one-year-supply claim cannot be read in isolation, noting that it is located less than an inch away from the allegedly clarifying language, "8 REFILLS HOLDS UP TO 2160** TOTAL DIAPERS" and that the two statements are in similar sized fonts that contrast with the background and would not be reasonably disregarded by a consumer. Reply at

5–6. Defendants argue that the up-to-2160-diapers claim explicitly informs customers that the refill product has a finite capacity based on the newborn-sized diapers, and allows a reasonable customer to determine the amount of capacity they would receive for other sized diapers. *Id.* at 9.

The Court addresses each state law claim in the order presented in the Complaint; for each claim, the Court will address each of Defendant's arguments.

### 2. *Connecticut (Claim 1)*

The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stats. §§ 42-110a, *et seq.*, provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Conn. Gen. Stat. § 42–110b(a), and provides a private cause of action for "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b[.]" *Id.* § 42-110g(a).

### a. Statute of Limitations

An action for damages under CUTPA "may not be brought more than three years after the occurrence of a violation of [CUTPA]." *Id.* § 42-110g(f). The Connecticut Supreme Court "has recognized that under certain circumstances, the limitations period may be tolled under the continuing course of conduct doctrine." *Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000) (citing *Blanchette v. Barrett*, 640 A.2d 74, 80 (Conn. 1994), *overruled on other grounds by Grey v. Stamford Health Sys., Inc.*, 924 A.2d 831 (Conn. 2007)). Such tolling may be appropriate "in situations in which, because of a continuous course of contacts or dealings, it cannot be said with precision when a specific act or omission occurred in the course of the relationship. In this situation, the statute may be tolled until the time of the last act within the course of the relationship." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB),

2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (quoting *Partitions, Inc. v. Blumberg Assocs.*, No. CV-98-0576664-S, 2001 WL 1332174, at *3 (Conn. Super. Ct. Oct. 9, 2001)) (citations omitted). There is no applicable delayed discovery rule.

In their opposition to the motion to dismiss, Plaintiffs concede that tolling of the statute of limitations under the delayed discovery rule is not available under CUTPA. Opp'n at 49. Because Plaintiffs have not contested Defendants' allegation that Playtex sold the Diaper Genie line to Angelcare on December 17, 2019, and thereafter ceased selling the refill products, and because the Complaint was filed more than three years later on January 30, 2023, the Court finds that Plaintiffs' claim against Playtex under CUTPA is untimely. As Plaintiffs have alleged no facts that would suggest a continuing course of deceptive conduct by Playtex extending beyond the sale of the Diaper Genie line of products, there is no applicable exception to the three-year statute of limitations.

Accordingly, the Court will dismiss Claim 1 against Playtex.

### b.   Pleading Requirements

"To state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce." *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016), *aff'd*, 666 Fed. App'x 84 (2d Cir. 2016).

### i.   Damages

"The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered

24

an ascertainable loss due to a CUTPA violation." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 947 A.2d 320, 329–30 (Conn. 2008) (internal quotation marks omitted). The ascertainable loss requirement does not, however, limit CUTPA to "providing redress only for consumers who can put a precise dollars and cents figure on their loss." *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 816 (Conn. 1981). Moreover, the failure to prove a particular amount of damages does not render a plaintiff's action subject to dismissal for failure to make a *prima facie* case. *Id.* at 816; *see also Marinos v. Poirot*, 66 A.3d 860, 866 (Conn. 2013) ("[A]n ascertainable loss 'is a deprivation, detriment [or] injury that is capable of being discovered, observed or established. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . Under CUTPA, there is no need to allege or prove the *amount* of the actual loss.'" (emphasis in original) (quoting *Serv. Road Corp. v. Quinn*, 698 A.2d 258, 262 (Conn. 1997))).

A loss need not be significant to be ascertainable. Under CUTPA, "the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 276 (D. Conn. 2017) (citing *Madonna v. Acad. Collection Serv., Inc.*, No. 3:95-CV-00875 (AVC), 1997 WL 530101, at *11 (D. Conn. Aug. 12, 1997)); *Hinchliffe*, 440 A.2d at 815 ("CUTPA provides an action more flexible and a remedy more complete than did the common law.")

Under this standard, Defendants' arguments as to the failure to plead an actual injury are unpersuasive. Here, Plaintiffs have argued that they purchased the refill products at a given price, expecting to receive a full year's supply of cartridges, and that they would not have purchased the refill products if they had known that the one-year claim was false. Compl. ¶ 80. They allege that because the product that they received did not last them for a full year, they did not receive the benefit of their bargain. *Id.*

Accepting these allegations as true, Plaintiffs have clearly pled an ascertainable loss. Whether or not the refill cartridges were, in fact, capable of holding up to 270 newborn-sized diapers, and regardless of the price of individual refill cartridges as compared to refill cartridges within the multi-packs purchased by Plaintiffs, Plaintiffs have alleged an ascertainable loss in the form of a discrepancy between the product they believed they were purchasing and the product they, in fact, received. *See, e.g.*, *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 280 (D. Conn. 2007) (holding that "[c]ertain language in Connecticut case law may suggest that CUTPA's ascertainable loss requirement is satisfied simply by a deprivation of the benefit of plaintiff's bargain"); *Hinchliffe,* 440 A.2d at 814 ("Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known.").

Moreover, Plaintiffs additionally claim that they were injured because they were required to purchase replacement diaper disposal products when the refill cartridges ran out prematurely; they would not have had to purchase such products if the refill products had lasted for the entire year, as indicated on the package. Compl. ¶ 82. This, too, is an ascertainable loss under CUTPA.

Accordingly the Court finds that Plaintiffs have adequately pled an ascertainable loss.

## ii.  Causation

To state a claim under CUTPA, a plaintiff must "establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, the plaintiff suffered an injury." *Abrahams v. Young & Rubicam, Inc.*, 692 A.2d 709, 712 (Conn. 1997) (citation omitted) (emphasis in original). "The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." *Id.* "[M]ere 'but for' causation is not

26

sufficient to support a CUTPA claim." *Id.* Yet, causation does not require reliance. *See Meyers v. Cornwell Quality Tools, Inc.*, 674 A.2d 444, 453 (Conn. 1996) ("It is well established that '[t]he CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain.'" (quoting *Associated Inv. Co. P'ship v. Williams Assocs. IV*, 645 A.2d 505, 510 (1994))).

Here, Plaintiffs allege that they purchased the refill products "as a direct and proximate result" of Defendants' claims, *see* Compl. ¶ 82, and although not required as an element of a CUTPA claim, they in fact plead reliance on such claims. *Id.* ¶ 80 ("If Defendants had advertised [their] Refill Products truthfully and in a non-misleading fashion, Plaintiff and other Connecticut subclass Members would not have purchased them or would not have paid as much as they did for them."). Plaintiffs have therefore clearly alleged that Defendants' misrepresentations caused their injuries.

Accordingly, the Court concludes that Plaintiffs have adequately pled causation.

### iii.  Rule 9(b)

It is well-established that CUTPA claims in federal court need not meet the heightened pleading standards of Rule 9(b). *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) ("It is well established that CUTPA claims need not contain the elements of fraud."); *Associated Inv. Co. Ltd. P'ship*, 645 A.2d at 510.

Accordingly, Defendants' argument regarding Rule 9(b) does not apply to this claim.

### c.  Failure to State a Claim

In assessing whether an act or practice is unfair under CUTPA, the Connecticut Supreme Court has adopted the Federal Trade Commission's "cigarette rule," which enumerates three relevant factors that courts should weigh:

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons.]

*Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 994 A.2d 153, 173 (Conn. 2010) (quoting *Ramirez v. Health Net of the Northeast, Inc.*, 938 A.2d 576, 588–89 (Conn. 2008)). A court need not find that all three criteria have been met in order to find a given practice unfair; a practice may violate CUTPA because of the degree to which it meets one factor, or because, to a lesser extent, it meets all three. *Id.* "[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013).

In the context of deceptive advertising or misleading claims, courts consider whether: (1) the "representation, omission, or other practice [is] likely to mislead consumers;" (2) the consumer "interpret[s] the message reasonably under the circumstances;" and (3) "the misleading representation, omission, or practice [is] material—that is, likely to affect consumer decisions or conduct." *Lemberg L., LLC v. eGeneration Mktg., Inc.*, No. 3:18-CV-570 (CSH), 2020 WL 2813177, at *13 (D. Conn. May 29, 2020) (internal quotation marks omitted); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 95 F. Supp. 3d 284, 288 (D. Conn. 2015) (citing *Smithfield Assocs., LLC v. Tolland Bank*, 860 A.2d 738, 749 (Conn. App. 2004)).

"[W]hether a practice is unfair and thus violates CUTPA is an issue of fact." *Lemberg L., LLC*, 2020 WL 2813177, at *13 (quoting *Smithfield Assocs., LLC*, 860 A.2d at 749). Indeed, Connecticut courts have generally been reluctant to resolve cases involving allegedly deceptive advertising at the motion to dismiss stage, given that it is difficult to determine, as a matter of

law, how a reasonable consumer might interpret a given phrase. *See, e.g.*, *Langan*, 95 F. Supp. 3d at 289 ("Whether the phrases on defendant's sunscreen packaging are deceptive is a question of fact that is not readily susceptible to resolution on a motion to dismiss."); *Naples v. Keystone Bldg. & Dev. Corp.*, 990 A.2d 326, 337 (Conn. 2010) ("It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier[.]").

In other words, at this stage, "the [c]ourt need not and should not determine as a matter of law whether [the defendant's] conduct, as alleged, actually violated CUTPA. Instead, the proper inquiry is whether [the plaintiff] has alleged sufficient facts to 'raise a reasonable expectation that discovery will reveal evidence' supporting the claim." *Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 132, 142 (D. Conn. 2015) (quoting *Twombly*, 550 U.S. at 556).

Here, Defendants encourage the Court to find, as a matter of law, that Plaintiffs' reading of certain claims is unreasonable, and that a reasonable consumer would understand the one-year claim to be qualified by the up-to-270 claim and other disclaimers on the packaging. Mem. at 23–41. Under Connecticut law, these are questions of fact, inappropriate for the Court to resolve at this time.

Accordingly, the Court finds that Plaintiffs have pled facts sufficient support a claim under CUTPA on behalf of the Connecticut subclass. Claim 1 will proceed against Angelcare.

### 3. *New York (Claims 2 and 3)*

New York General Business Law ("GBL") §§ 349 and 350 establish similar causes of action. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[,]" while Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any

service."

"The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices." *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 636 (S.D.N.Y. 2016).

### a. Statute of Limitations

"Claims brought under sections 349 and 350 of New York's GBL are subject to a three-year statute of limitations." *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 1:18-CV-11742-GHW, 2020 WL 1330662, at *9 (S.D.N.Y. Mar. 23, 2020) (citing N.Y. C.P.L.R. § 214(2)). Under New York Law, "a claimant's cause of action accrues upon injury by the deceptive act or practice, *i.e.*, 'when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief.'" *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E. 1078, 1083 (N.Y. 2001)).

Defendants argue that the delayed discovery rule does not apply to claims under GBL §§ 349 and 350. Mem. at 37; *see also Wender v. Gilberg Agency*, 276 A.D.2d 311, 312 (N.Y. App. Div. 2000) ("the date of discovery rule is not applicable [to claims under GBL § 349] and cannot serve to extend that limitations period"); *see also Graham v. HSBC Mortgage Corp.*, No. 18-CV-4196 (KMK), 2022 WL 1266209 (S.D.N.Y. 2022); *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 737 (W.D.N.Y. 2020). But regardless of whether New York courts apply a "delayed discovery rule," it is well-established that claims under the GBL accrue, as described above, once all of the factual circumstances necessary to establish a right of action have occurred. *Gristede's Foods, Inc*, 532 F. Supp. 2d at 453. In other words, the accrual of the cause

of action under GBL § 349 is triggered by the injury itself, not the plaintiffs' discovery of that injury. *See Fero*, 502 F. Supp. 3d at 736.

In cases involving "deceptive practices inducing unrealistic expectations[,]" New York courts have found that "plaintiffs suffer[] no measurable damage until the point in time when those expectations [are] actually not met[.]" *Gaidon*, 750 N.E. at 1084 ("When plaintiffs purchased the insurance policies at issue, defendants falsely stated that, at a specified time, the policy's dividends would thereafter cover the premium costs. The New York Court of Appeals held that plaintiffs' GBL § 349 claims did not accrue until years later when the premiums were demanded, after the date upon which they were supposed to be entirely offset by the dividends, because prior to that date, 'a court could not have ordered any remedy.'").

In cases in which the injury occurs at the time of purchase, even when the plaintiff is not aware of the injury, however, the statute of limitations runs from the time of purchase and will not be extended. *See, e.g.*, *Fero*, 502 F. Supp. 3d at 736 (finding that plaintiffs' injury occurred— and their claim therefore accrued—when defendants began to store plaintiffs' personal information in their inadequately protected systems, not years later, when the data breach occurred); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014) (finding that the GBL § 349 claim accrued when vehicles with defective brake systems were purchased, rather than "when the brakes failed or when [the plaintiffs] had to pay for repairs of the faulty brakes"); *see also Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 170 F. Supp. 3d 488, 499 (W.D.N.Y. 2016) (finding that the GBL § 349 claim accrued when the defective "TrimBoard" was installed and not when the plaintiff discovered deterioration); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (finding that the GBL § 349 claim accrued when computers with faulty capacitors were purchased).

31

"At the motion to dismiss stage, dismissal of a complaint on the grounds that the statute of limitations has expired is appropriate only if the complaint clearly shows the claim is out of time." *Levy v. BASF Metals Ltd.*, No. 1:15-cv-7317-GHW, 2017 WL 2533501, at *4 (S.D.N.Y. June 9, 2017) (quotation omitted), *aff'd*, 917 F.3d 106 (2d Cir. 2019).

Here, Plaintiffs have alleged that they "ha[d] no reason to know that the '1 YEAR SUPPLY' statement was false until at least a few months of using the Refill Cartridges[.]" *See* Opp'n at 50. Defendants are right that, under New York law, such an allegation is not sufficient to extend the statute of limitations. But as Defendants emphasize, Plaintiffs' "own usage patterns and a variety of individualized factors would impact whether they would reach the maximum estimated advertised holding capacity of 270 newborn sized diapers" and whether the refill products would last for a year. *See, e.g.*, Mem. at 33. Thus, accepting Plaintiffs' allegations as true, as the Court must at this stage, Plaintiffs' claims could not have accrued until their usage patterns were established, such that it became clear that the refill products would not be able to attain the advertised capacity or last for the advertised duration. Indeed, before that time, "a court could not have ordered any remedy." *Gaidon*, 750 N.E. at 1084.

The Court concludes that, at this stage in the proceedings, it is too soon to identify when precisely the statute of limitations began to run. *See Berkshire Bank v. Lloyds Banking Group plc*, 20-1987-cv, 2022 WL 469819, at *5 (2d Cir. 2022) (reversing the district court's dismissal of plaintiffs' fraud claims as time-barred because the record did not clearly establish when the claim accrued). Accepting Plaintiffs' well-pled facts as true, the Court cannot at this time determine whether the claims under GBL §§ 349 and 350 against Playtex are time-barred.

Accordingly, the Court will deny Defendants' motion to dismiss Claims 2 and 3 against Playtex.

b.   Pleading Requirements

To successfully assert a claim under either § 349 or § 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).

i.   Damages

To successfully plead an injury, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (quoting *Orlander*, 802 F.3d at 302). Deception alone is generally not sufficient to establish injury, absent an allegation that the price was inflated because of the defendant's deception, or that the product otherwise harmed the plaintiff. *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 215 (N.D.N.Y. 2023) ("'[D]eception as an injury' is insufficient to allege a claim for consumer fraud under New York law."); *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012) ("New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead actual injury for a Section 349 claim.").

Plaintiffs may, however, allege an injury under Sections 349 or 350 under a price premium theory, "an allegation that a plaintiff overpaid for the product, or, stated differently, 'by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.'" *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711 (LJL), 2020 WL 6564755, at *10 (S.D.N.Y. Nov. 9, 2020) (citation omitted) (quoting *Ackerman v. Coca-Cola*

*Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010)); *Preira*, 885 F. Supp. 2d at 676–77 ("[A] plaintiff must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." (internal quotation marks omitted)).

Generally, a complaint alleging that, had they known the truth, the plaintiff would not have purchased the products for the same price or on the same terms will survive a motion to dismiss. *See, e.g.*, *DeCoursey*, 673 F. Supp. 3d at 216 (finding sufficient plaintiffs' alleged injury, which stemmed from their purchase of the eye cream with the expectation that it would be safe for use in the eye region and their claim that they would not have purchased the cream or would have paid substantially less for it if they had known it contained unsafe color additives); *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS) (TWD), 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under GBL § 349 where he alleged that, had he "known the truth, he would not have bought the vodka, or would have paid less for it" (internal quotation marks omitted)); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288–89 (S.D.N.Y. 2014) (finding a sufficiently-pled § 349 injury where the plaintiff alleged that he would not have paid the price charged for fat-free milk had he known it contained fat); *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 455–56 (S.D.N.Y. 2022) (finding that the plaintiff adequately pled the injury prong of her GBL claims because she alleged she paid a premium for a product based on the defendant's representation that the product was "microbiome gentle").

Plaintiffs need not specifically identify a comparable product nor specify the price of competing products in order to sustain their claim under Sections 349 or 350. *See, e.g.*, *Colpitts*,

527 F. Supp. 3d at 578 (finding that, although the complaint did not include a detailed price comparison of the defendant's product prices and competitors' prices, plaintiffs' claims that they paid a price premium based on the defendant's deception, and that they would not have purchased the defendant's product at the same price had they known of the deception, were sufficient to support a price premium injury under Sections 349 and 350); *Rodriguez v. Hanesbrands Inc.*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018) ("defendant's contention that a plaintiff 'must identify a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory . . . contradicts the weight of the law in this Circuit.'" (quoting *Greene*, 262 F. Supp. 3d at 69)); *Axon v. Fla. Nat. Growers, Inc.*, 813 Fed. App'x 701, 704 (2d Cir. 2020) (the plaintiff's "failure to identify the prices of competing products to establish the premium that she paid is not fatal to [the plaintiff's] claim").

Here, Plaintiffs have clearly alleged that they "spent money in the transaction that [they] otherwise would not have spent had [they] known the truth about Defendants' advertising claims." Compl. ¶ 41. They further claim that they would not have purchased the refill products at the price they paid, if they had known that they would not last an entire year. *Id.* ¶ 91. Finally, they allege that the products they received "had less value than Defendants represented" and that they were therefore "deprived of the benefit of [their] bargain[.]" *Id.* ¶ 92.

Accordingly, the Court concludes that Plaintiffs have pled a cognizable injury under GBL §§ 349 and 350.

### ii. Causation

A "violation of either section [349 or 350] requires that the defendant's conduct deceive a

reasonable consumer in a material respect, work a harm to the public at large, and directly cause

the plaintiff's injury." *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 607 (S.D.N.Y. 2012)

(internal quotation marks omitted) (citing *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y.

2005)). In the context of false advertising "under a price premium theory, a plaintiff must allege

not only that [the] defendants charged a price premium, but also that there is a connection

between the misrepresentation and any harm from, or failure of, the product." *Kraus v. Snow*

*Teeth Whitening LLC*, No. 20CV6085JMAST, 2022 WL 4642170, at *5 (E.D.N.Y. Sept. 15,

2022), *report and recommendation adopted*, No. 20-CV-6085 (JMA)(ST), 2022 WL 4662819

(E.D.N.Y. Sept. 30, 2022) (internal quotation marks omitted) (quoting *Turk v. Rubbermaid Inc.*,

No. 21-CV-270 (KMK), 2022 WL 836894 at *8 (S.D.N.Y. Mar. 21, 2022)).

Reliance is not an element of a claim under Section 349 or Section 350. *See Stutman v.*

*Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) ("[A]s we have repeatedly stated, reliance is

not an element of a section 349 claim."); *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995) (Section 349 "does not require proof of

justifiable reliance."); *Fishon*, 2020 WL 6564755, at *9 (explaining that "[r]eliance is not an

element of a private cause of action under either statute[,]" referring to Section 349 and Section

350); *Koch*, 967 N.E.2d at 676 (reversing the Appellate Division's order, which imposed a

reliance requirement on Sections 349 and 350 and clarifying that "[j]ustifiable reliance by the

plaintiff is not an element of [either] statutory claim").

The caselaw, however, is somewhat mixed. Some courts have dismissed cases based on

the plaintiff's failure to sufficiently allege reliance. *See, e.g.*, *Gale v. Int'l Business Machines,*

*Corp.*, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004) (dismissing the complaint where the plaintiff

cited several allegedly misleading statements by defendants, but did not plead that he had viewed

those statements prior to purchasing the product, nor that he relied upon those statements when making his purchase); *Brady v. Basic Rsch., LLC*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (dismissing claims under Rule 12(b)(1) for lack of standing where purchaser of "fat-burning" product could not "plausibly allege an injury traceable to" a spokesperson for the product because she bought the product before the representations in question had been made and therefore could not have relied on them in making her purchase).

But a number of courts, at least one of which expressly followed the lead of the New York Court of Appeals in *Koch*, have not. *See Fishon*, 2020 WL 6564755, at *10 ("The allegation that they relied on Peloton's representations coupled with the advertisement is sufficient to support an inference that they were injured by reason of the false claims in the advertisements. . . . Nothing more is required.") (relying on *Koch*); *see also Cummings v. FCA U.S. LLC*, 201 F. Supp. 3d 288, 306 (N.D.N.Y. 2019) (holding that an allegation that a plaintiff purchased a class vehicle based on certain of the defendant's representations "plausibly suggests that Plaintiff saw at least these particular statements before purchasing the Class Vehicle"); *Stutman*, 731 N.E.2d at 612–13 (distinguishing between reliance and causation; emphasizing that only causation is required in Section 349 and 350 cases; finding sufficient plaintiffs' allegation that, because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required; and specifically holding that plaintiffs did not need to additionally allege that they would not have entered into the transaction had they known about the fee); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (finding that, where a plaintiff alleged that the defendant's "false, misleading, and deceptive misrepresentations and omissions . . . deceived and misled [him,]" it was reasonable for the court to infer that the plaintiff had seen the advertisements in question prior to

purchasing the product).

In any event, here, Plaintiffs have pled both reliance and causation. *See* Compl. ¶ 89 ("In [purchasing the Refill Products], Plaintiff Rose[, representative of the New York subclass,] relied upon Defendants' false, misleading, and deceptive representations that the Refill Products could last an entire year, and that they could hold up to 270 diapers per Refill Cartridge. Plaintiff Rose spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims."); *Id.* ¶ 92 ("As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Rose and other Members of the New York subclass were injured in that they: (1) paid money for Refill Products that were not what Defendants represented; (2) were deprived of the benefit of the bargain because the Refill Products they purchased were different than Defendants advertised; and (3) were deprived of the benefit of the bargain because the Refill Products they purchased had less value than Defendants represented.").

Accordingly, the Court finds that Plaintiffs have adequately pled causation under GBL §§ 349 and 350.

### iii. Rule 9(b)

Claims under § 349 and § 350 are "not subject to the pleading-with-particularity requirements of Rule 9(b)" and "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)); *see also Greene*, 262 F. Supp. 3d at 67 ("Claims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)").

Accordingly, Defendants' arguments regarding Rule 9(b) do not apply to Claims 2 and 3.

c.   Failure to State a Claim

In order to state a claim under either § 349 or § 350, "a plaintiff must allege that a

defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and

that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch*, 967

N.E.2d at 675 (internal quotation marks omitted). "[I]n determining whether a reasonable

consumer would have been misled by a particular advertisement, context is crucial." *Mantikas v.*

*Kellogg Company*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Oswego Laborers' Local 214*

*Pension Fund*, 647 N.E.2d at 742). When making such a determination, courts therefore view the

challenged advertisement as a whole, including any qualifiers or disclaiming language. *Mantikas*,

910 F.3d at 636; *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

At the motion-to-dismiss stage, a determination that the allegedly deceptive act or

practice is not materially misleading "is appropriate only if Plaintiffs' claims are 'patently

implausible' or 'unrealistic.'" *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 95

(S.D.N.Y. 2021) (quoting *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187,

at *4 (S.D.N.Y. Sept. 25, 2017)). While in some circumstances courts may determine whether an

act is materially misleading as a matter of law—*see, e.g.*, *Fink*, 714 F.3d at 741 (upholding the

district court's dismissal of a complaint for facial implausibility, where the plaintiffs' allegations

were materially inconsistent with the sole advertisement submitted); *Twohig v. Shop-Rite*

*Supermarkets, Inc.*, 519 F. Supp. 3d 154, 162 (S.D.N.Y. 2021) (finding as a matter of law that no

reasonable consumer could read the term "vanilla" alone to indicate that vanilla from vanilla

beans was the predominant or exclusive flavor ingredient contained in the product)—"this

inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage[.]"

*Cooper*, 553 F. Supp. 3d at 95–96 (quoting *Duran v. Henkel of America*, 450 F. Supp. 3d 337,

346 (2020) (collecting cases)); *see also Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) ("the question of what might deceive the reasonable consumer is a question of fact"); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) (noting that "usually [this] determination is a question of fact") (citation omitted).

As described above, the Court cannot, at this juncture, conclude that Plaintiffs' claims are "patently implausible" or "unrealistic." *See Cooper*, 553 F. Supp. 3d at 95. Plaintiffs' allegations are sufficient to state a plausible claim for relief under GBL §§ 349 and 350, and any further inquiry is "a question of fact not suited for resolution at [this] stage[.]" *Id.* at 95–96; *see Koch*, 967 N.E.2d at 676 (noting that "disclaimers" in the product's advertisement "at this stage of the proceedings . . . do not establish a defense as a matter of law.").

Accordingly, the Court finds that Plaintiffs have pled facts sufficient support claims under GBL §§ 349 and 350 on behalf of the New York subclass. Claims 2 and 3 will proceed against both Defendants.

### 4.   California (Claims 4-6)

Plaintiffs have alleged claims under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* Compl. ¶¶ 102–38. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code. § 1770(a). The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Finally, the FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal.

Bus. & Prof. Code § 17500.

"Courts often analyze the CLRA, UCL, and FAL together because they share similar attributes." *Schneider v. Colgate-Palmolive Co.*, No. 5:22-CV-1294, 2023 WL 4009099, at *3 (N.D.N.Y. June 15, 2023) (citing *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 344 (S.D.N.Y. 2021)); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014)).

> a.   Statute of Limitations

CLRA and FAL claims are subject to a three-year statute of limitations, while claims under the UCL are subject to a four-year statute of limitations. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010); Cal Civ. Code. § 1783 (establishing a three-year statute of limitations under the CLRA); Cal. Bus. & Prof. Code. § 17208 (establishing a four-year statute of limitations for actions under the UCL); Cal. C.C.P. § 338(a) (establishing a default three-year statute of limitations for statutory actions); *Cnty. of Fresno v. Lehman*, 280 Cal. Rptr. 310, 313 n.7 (Cal. Ct. App. 1991) (applying the three-year default statute of limitations established by § 338 to a claim under the FAL).

These statutes of limitations may be tolled under the delayed discovery or fraudulent concealment rules. *Yumul*, 733 F. Supp. 2d at 1130. The Court confines the following discussion to the delayed discovery rule, the only tolling exception relevant here. "In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Marketing & Sales Pracs. Litig.*, No. C–05–04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 146 Cal. Rptr. 271, 274–75 (Cal. Ct. App. 1978)).

"Mere conclusory assertions that delay in discovery was reasonable are insufficient and will not enable the complaint to withstand general demurrer." *Saliter*, 146 Cal. Rptr. at 175.

Here, Plaintiffs have not pled any specific facts describing the time and manner of discovery or their inability to have made an earlier discovery despite reasonable diligence. In their opposition, they generally claim that they had no reason to know that Defendants' claims were false "until at least a few months of using the Refill Cartridges, after it was clear that the Refill Cartridges would not in fact last an entire year." Opp'n at 50. These allegations do not satisfy the requirements of the delayed discovery rule under California caselaw.

Accordingly, the Court will dismiss as untimely Plaintiffs' claims under the CLRA and the FAL against Playtex. Plaintiffs' claim against Playtex under the UCL survives, without the need for the delayed discovery rule, because of its four-year statute of limitations.

### b.   Pleading Requirements

#### i.   Actual Damages

In order to establish standing under the UCL and FAL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*; and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011) (emphasis in original). The CLRA requires that the plaintiff allege a "tangible increased cost or burden to the consumer." *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 301 (Cal. 2009).

Importantly, California courts have held that the statutory standing requirements of the CLRA, UCL, and FAL are more stringent than the federal Article III standing requirement. *See In re Sony*, 903 F. Supp. 2d at 965; *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal.

2013). Even if a plaintiff has alleged an "injury in fact" sufficient to satisfy Article III, in order to satisfy the injury requirements of the UCL, or FAL, such injury must include "lost money or property," and in order to satisfy the injury requirement of the CLRA, such injury must include an "increased cost or burden to the consumer" *In re Sony*, 903 F. Supp. 2d at 965 (quoting *Meyer*, 200 P.3d at 301; *Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 589, 625 (Cal. Ct. App. 2009)).

Plaintiffs' allegations satisfy the standard for economic injury under the CLRA, UCL, and FAL. Plaintiffs have alleged that they spent money purchasing refill products that they would not have spent if they had known that the misleading statements on the packaging were not true. Compl. ¶ 118. They also allege that they had to purchase additional refill products to compensate for the shortfall, *see id.* ¶ 49 ("Plaintiff had to purchase additional diaper disposal products after running out of Defendants' Refill Cartridges to make up for the additional 9 months that Defendants shorted her.").

Accordingly, the Court finds that Plaintiffs have adequately pled both "lost money" and an "increased cost or burden" sufficient to satisfy the injury requirement of all three consumer protection statutes.

### ii.    Causation

In order to establish standing under the CLRA, the UCL, or the FAL, a plaintiff must allege actual reliance. *See Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) ("To prevail on their causes of action under the UCL, FAL, and the CLRA, Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance.") (internal citations omitted); *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111–12 (S.D. Cal. 2011) ("actual reliance is required to have

standing to sue under the CLRA"); *Moore v. Mars Petcare U.S., Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) ("Since the passage of Proposition 64, a plaintiff must allege actual reliance in order to have standing to pursue UCL and FAL claims.").

Actual reliance means that "the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset*, 246 P.3d at 888. However, a "plaintiff is not required to allege that the challenged misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* (citing *In re Tobacco II Cases*, 207 P.3d 20, 40–41 (Cal. 2009)).

Here, as described at length above, Plaintiffs have pled reliance. *See* Compl. ¶ 118 ("Plaintiff Page[, the representative of the California subclass,] has standing to pursue this claim because . . . [she] relied upon Defendants' false representations that the Refill Products would last an entire year, and that they could hold up to 270 diapers when that is not true when used in the real world. Plaintiff Page spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.").

Accordingly, Plaintiffs have satisfied the causation requirement for standing under all three statutes.

### iii.   Rule 9(b)[8]

The CLRA, UCL, and FAL all "require plaintiffs to meet the pleading standards of Rule 9(b) and demonstrate that members of the public are likely to be deceived by the alleged misrepresentations." *Schneider*, 2023 WL 4009099, at *3.

"A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Van Mourik v.*

---

[8] To the extent that Plaintiff argues that the Court should apply Second Circuit caselaw to ascertain the specific pleading requirements of Rule 9(b) for out-of-state claims, the Court is not persuaded. As with all other pleading requirements discussed in this Section, for each claim, the Court will apply the law of the state whose statute is invoked.

*Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889-JD, 2018 WL 1116715, at *4 (N.D. Cal. Mar. 1, 2018) (quoting *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989)). The rule is not rigid, and "may be relaxed as to matters within the opposing party's knowledge." *Moore*, 885 F.2d at 540. Conclusory allegations without specific supporting details will not suffice, but Rule 9(b) "does not require absolute particularity or a recital of the evidence . . . . [A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) (internal citations omitted).

Moreover, as described in Rule 9(b), the state of mind elements—namely, malice, intent, and knowledge—may be alleged generally. *See* Fed. R. Civ. P. 9(b); *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally."); *see also Moore*, 966 F.3d at 1020 (holding that the plaintiffs' complaint satisfied Rule 9(b) because it alleged the "who, what, when, where, and how of the misconduct charged" as well as "what [was] false or misleading about the purportedly fraudulent statement and why it [was] false").

Plaintiffs meet the who and what prongs of Rule 9(b): they have alleged that Defendants created packaging for the refill products that contained misleading statements, and the content of the statements and the appearance of the packaging are not disputed. *See* Compl. ¶¶ 59–60. Additionally, the Court disagrees with Defendants' argument that Plaintiffs' failure to plead "where, when, and how" they came to view the statements on the product's packaging renders their claims "deficient." Mem. at 46; Reply at 25. Plaintiffs have alleged that they "reviewed the

product's labeling and packaging"—not text on the third-party sellers' websites—and saw the contested claims prior to making their purchases. They additionally each allege approximately when they made the purchase.

Taken together, these allegations clearly identify the circumstances constituting the alleged fraud with sufficient particularity to allow Defendants to prepare an adequate response. *See Van Mourik*, 2018 WL 1116715, at *5 (noting, *inter alia*, that "[t]he complaint explains in full detail why these statements are deceptive and misleading and alleges that the statements were all reproduced on [Defendant's] website . . . ."); *Moore*, 966 F.3d at 1020 ("The fact that Plaintiffs placed Defendants on sufficient notice to respond to the alleged fraud reflects how their allegations meet Rule 9(b)."). As a result, Defendants cannot be unsure as to what representations Plaintiffs now challenge.

While it is true that significant factual context is still as yet undiscovered, such gaps are the purpose of discovery. Dismissing these claims at this juncture would be inappropriate. Plaintiffs have provided sufficient information for Defendants to be on notice as to the conduct at issue in this suit.

Accordingly, the Court finds that Plaintiffs have satisfied Rule 9(b).

        c.   Failure to State a Claim

Claims under the CLRA, UCL, and FAL are all governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer."). This test requires plaintiffs to demonstrate that "members of the public are likely to be deceived." *Bank of the West v. Superior Court*, 833 P.2d 545, 546 (Cal. 1992). Together, these laws prohibit "not

only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike*, 45 P.3d 243, 304 (Cal. 2002)).

California courts have held that, whether a business practice is deceptive, is typically a question of fact not appropriate for decision on demurrer. *Id.* at 938–39; *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236–37 (Cal. Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") (quoting *McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006)).

For the reasons described at length in the sections above, at this stage of the proceedings, the Court cannot determine, as a matter of law, whether Defendants' labeling statements constitute a deceptive business practice under the CLRA, UCL, or FAL.

Accordingly, the Court finds that Plaintiffs have pled facts sufficient support claims under the CLRA, UCL, and FAL on behalf of the California subclass. Claims 4 and 6 will proceed against Angelcare. Claim 5 will proceed against both Defendants.

### 5. *North Carolina (Claim 7)*

The North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stats §§ 75-1.1, *et seq.*, provides a "civil legal means to maintain [ ] ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within [the] State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in [the] State." *Nobel v. Foxmoor Grp., LLC*, 868 S.E.2d 30, 33 (N.C. 2022) (quoting *Bhatti v. Buckland*, 400 S.E.2d 440, 443 (N.C. 1991)).

#### a.   Statute of Limitations

The statute of limitations for a UDTPA claim is four years after the cause of action

accrues. N.C. Gen. Stat. § 75-16.2; *Withers v. BMW of North America, LLC*, 560 F. Supp. 3d

1010, 1018 (W.D.N.C. 2021). For UTPA claims grounded in fraud, the violation occurs "at the

time that the fraud is discovered or should have been discovered with the exercise of reasonable

diligence." *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016)

(quoting *Rothmans Tobacco Co. v. Liggett Grp., Inc.*, 770 F.2d 1246, 1249 (4th Cir. 1985)).

Because the statute of limitations under the UDTPA is four years, Defendants' argument

regarding the timeliness of Plaintiffs' claims against Playtex do not apply.

Accordingly, Defendants' arguments regarding the statute of limitations period does not

apply to Claim Seven.

### b.  Pleading Requirements

"To set forth a UDTPA claim, a plaintiff must plead (1) an unfair or deceptive act or

practice; (2) in or affecting commerce; (3) which proximately caused injury to plaintiff."

*Withers*, 560 F. Supp. 3d at 1019 (citing *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th

Cir. 2018)).

### i.  Actual Damages

The Supreme Court of North Carolina recently held that the North Carolina Constitution

does not include an injury-in-fact standing requirement, where a purely statutory or common law

right is at issue. *Comm. to Elect Dan Forest v. Emps. Political Action Comm.*, 853 S.E.2d 698,

734 (N.C. 2021). This Court, of course, remains bound by the standing requirements laid out in

Article III, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (in order for a

federal court to hear a case, plaintiffs must allege that they "have (1) suffered an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision.").

As described at length above, however, Plaintiffs have easily cleared this bar by alleging economic injury stemming from the refill products' failure to meet their durational expectations, as well as the need to purchase additional diaper disposal products in order to compensate.

Accordingly, Plaintiffs have pled an injury sufficient to confer standing.

### ii.   Causation

Claims under the UDTPA stemming from an alleged misrepresentation require a plaintiff to demonstrate reliance on the misrepresentation in order to demonstrate the necessary proximate cause. *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013). The question of reliance is generally one "for the jury, unless the facts are so clear that they support only one conclusion." *Withers*, 560 F. Supp. 3d at 1020 (quoting *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007)).

As described above, there is no reason to find otherwise here. Plaintiffs have alleged reliance on Defendants' misrepresentations, *see* Compl. ¶ 41, and that this reliance caused financial injury. *Id.* ¶ 43.

Accordingly, Plaintiffs have pled causation sufficient to satisfy the pleading requirements of the UDTPA.

### iii.  Rule 9(b)

Fraud-based UDTPA claims are subject to the heightened pleading standards set forth in Rule 9(b). *Withers*, 560 F. Supp. 3d at 1020. In order to state a claim, Plaintiffs therefore must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013). These heightened 9(b)

requirements are appropriate for "cases of affirmative misrepresentations because such are discrete, observable events which can be particularized. An affirmative misrepresentation involves a specific statement made at a specific place and time and involves specific persons." *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997).

The rationale behind Rule 9(b)'s heightened pleading standard is "to give a defendant sufficient notice of the claim to permit him to formulate a defense, to protect against frivolous suits, to eliminate suits where all the fraud facts are learned after discovery, and to protect defendants from harm to their goodwill and reputation." *Diop v. BMW of N. Am., LLC*, 511 F. Supp. 3d 679, 687 (E.D.N.C. 2021). As a result, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

Here, as described above, Plaintiffs have clearly alleged the statements that they found false or misleading (the up-to-270 and one-year claims). There is no dispute that these statements were located on the product packaging. Plaintiffs have further indicated where and approximately when they purchased the refill products, and they have alleged that they viewed the statements prior to making their purchases and relied on them when deciding which diaper disposal product to purchase.

Accordingly, the Court finds that Plaintiffs have met the requirements of Rule 9(b).

c.   Failure to State a Claim

In order to sustain a claim under the UDTPA, "[t]he [alleged] conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477

(E.D.N.C. 2013); *see also Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 902 (4th Cir. 1996); *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992).

"A practice . . . is deceptive if it has a tendency to deceive." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001); *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981) ("[P]roof of actual deception is not required."). An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 50 (2009) (internal quotation marks omitted) (emphasis removed); *see Gilbane Bldg. Co.*, 80 F.3d at 902 ("[T]he fair or unfair nature of particular conduct is to be judge by viewing it against the background of actual human experience and by determining its intended and actual effects upon others."). While the occurrence of the alleged conduct, damages, and proximate cause are generally questions of fact for the jury, "whether the conduct was unfair or deceptive is a legal issue for the court." *Gilbane Bldg. Co.*, 80 F.3d at 902; *see also Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009) ("Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court."). Yet, "a court generally determines whether an act or practice is unfair or deceptive based upon the jury's findings[.]" *Tucker v. Boulevard At Piper Glen LLC*, 564 S.E.2d 248, 250 (N.C. Ct. App. 2002) (suggesting that it would rarely be appropriate to make such a determination even at the summary judgment stage, unless "the facts are not disputed and the moving party is entitled to judgment as a matter of law").

Here, there remain significant factual issues that would impact whether Defendants' statements are deceptive or unfair under the UDTPA. As such, it is not appropriate to make such a determination at this time.

Accordingly, the Court finds that Plaintiffs have pled facts sufficient to support claims under the UDTPA on behalf of the North Carolina subclass and Claim Seven will proceed against both Defendants.

6. *Illinois (Claim 8)*

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, *et seq.*, "protect[s] consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)).

a. Statute of Limitations

The ICFA has a three-year statute of limitations. *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 762 (S.D. Ill. 2010) (citing 815 ILCS § 505/10a(e)). Illinois applies the "discovery rule" to actions involving torts, torts arising from contract, and other breaches of contractual duty. *Id.* (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1136 (Ill. 1995)). The delayed discovery rule also applies to claims under the ICFA. *Kremers*, 712 F. Supp. 2d at 762 (applying the delayed discovery rule to plaintiff's claims under the ICFA); *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981)) (a claim accrues under the ICFA "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.").

The discovery rule holds that "the relevant limitations period does not begin to run, 'until the injured party knows or should have known of his injury.'" *Kremers*, 712 F. Supp. 2d at 763 (quoting *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994)); *see also Clay v. Kuhl*, 727 N.E.2d 217, 220 (Ill. 2000) (The discovery rule delays the accrual of a

cause of action, and hence the start of the clock on the statute of limitations, until a plaintiff "knows or reasonably should know of an injury and that the injury was wrongfully caused.").

Under the rule, "a cause of action accrues when a plaintiff is 'possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *Kremers*, 712 F. Supp. 2d at 764 (quoting *Vector-Springfield Props. Ltd. v. Central Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir. 1997)). In other words, "the event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, . . . it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered." *Knox College*, 430 N.E.2d at 980. The goal is to encourage claimants to investigate and pursue causes of action in order to discourage delay, while not shielding wrongdoers. *Kremers*, 712 F. Supp. 2d at 764 (quoting *Langendorf v. City of Urbana*, 754 N.E.2d 320, 326 (Ill. 2001); *Pavlik v. Kornhaber*, 761 N.E.2d 175, 186 (Ill. 2001)).

When a plaintiff "had sufficient information to put a reasonable person on inquiry as to the nature of the defect . . . and whether a cause of action existed" is a determination to be made by the trier of fact. *Knox*, 430 N.E.2d at 981 (declining to find, as a matter of law, the point at which the claim accrued, and consequently, whether the claim was timely).

Here, as Plaintiffs have argued, the question of when their claim under the ICFA accrued is one of fact that the Court may not appropriately resolve at this point.

Accordingly, Claim Eight will proceed against both Defendants.

### b.   Pleading Requirements

In order to state a claim under the ICFA, a plaintiff must allege, "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive

or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of

conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th

Cir. 2012). The ICFA "is to be liberally construed to effectuate its purpose." *Tri-Plex Technical*

*Servs., Ltd. v. Jon-Don, LLC*, No. 5-21-0210, 2022 WL 16709517, at *7 (Ill. App. Ct. Nov. 4,

2022).

i.   Actual Damages

Actions brought under the ICFA require the plaintiff to allege "actual damage" as a result

of the defendant's violation of the Act. *Camasta*, 761 F.3d at 739. "The actual damage element

of a private ICFA action requires that the plaintiff suffer actual pecuniary loss." *Kim v. Carters,*

*Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (internal quotation marks omitted). Where an ICFA case

is brought by an individual consumer, "actual loss may occur if the seller's deception deprives

the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of

the property.'" *Id.* at 366 (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197–98 (Ill. App.

Ct. 2008)).

Illinois courts have dismissed cases in which the plaintiff merely alleged that they did not

receive as favorable a deal as expected but could not demonstrate that the actual product they

received was defective or worth less than what they paid. *See, e.g.*, *Kim*, 598 F.3d at 365–66

(upholding the district court's dismissal for failure to state a claim because the plaintiff did not

allege that the clothing they received was "defective or worth less than what they actually paid"

nor did they allege that "but for [the defendant's] deception, they could have shopped around and

obtained a better price in the marketplace"); *Mulligan*, 888 N.E.2d at 1196–97 (finding that the

plaintiff had failed to allege actual damages because, although the defendant induced the plaintiff

to purchase jewelry items for a certain price by citing to allegedly inflated retail prices in the

54

broader marketplace, the plaintiff could not establish that the value of what she received was less than the value of what she was promised).

Plaintiffs claim that, had they known that the refill products would not last a full year, they would not have purchased the refill products at all, nor would they have paid the same price. Compl. ¶ 52. This allegation alone does not meet the actual damages requirement under the ICFA because it does not include any claim that the product Plaintiffs received was worth less than what they actually paid. *See Kim*, 598 F.3d at 365–66. Plaintiffs' allegation that they were forced to purchase additional diaper disposal products because the refill products did not last as long as they claimed to, however, does meet the standard for actual damages because it is a clear pecuniary loss. *See* Compl. ¶ 52; *id.* at 365 ("The actual damage element of a private ICFA action requires that the plaintiff suffer actual pecuniary loss.").

Accordingly, Plaintiffs have sufficiently pled actual damages to sustain their claim under the ICFA.

### ii.   Causation

To prevail on a claim under the ICFA, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Siegel*, 612 F.3d at 935; *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the Act."). "In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513–14 (7th Cir. 2006). Here, Plaintiffs must demonstrate that "but for" Defendants' allegedly misleading representations, they would not have purchased the refill products at their allegedly inflated prices. *See Siegel*, 612 F.3d at 935.

Plaintiffs have alleged that they relied upon the representations made by Defendants in

deciding to purchase the refill products. Compl. ¶ 50. They have additionally alleged that they would not have purchased the products on the same terms if they had known that Defendants' representations were false. *Id.* ¶ 52.

Accordingly, the Court finds that Plaintiffs have alleged facts sufficient to demonstrate causation under the ICFA.

### iii.  Rule 9(b)[9]

"Complaints alleging deceptive practices in violation of the ICFA must be pled with sufficient particularity under Fed. R. Civ. P. 9(b)[.]" *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 754 (N.D. Ill. 2012); *see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (explaining that "[b]ecause neither fraud nor mistake is an element of unfair conduct" under the ICFA, a cause of action for unfair practices "need only meet the notice pleading standard of Rule 8(a)," in contrast to fraud-based complaints, which must meet the particularity requirement of Rule 9(b)). The particularity requirement "forces the plaintiff to conduct a careful pretrial investigation and minimizes the risk of extortion that may come from a baseless fraud claim[.]" *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citing *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir. 2005)). This requirement generally requires plaintiffs to plead the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009).

This requirement, however, should not be viewed rigidly, and what constitutes "particularity" will necessarily differ with the facts of each case. *Pirelli*, 631 F.3d at 442. The

---

[9] The ICFA also allows claims alleging unfair practices, which need only meet the notice pleading standards of Fed. R. Civ. P. 8(a). *Armbrister*, 896 F. Supp. 2d at 754. Plaintiffs have alleged only deceptive practices, *see* Compl. ¶¶ 151–52. Accordingly, the Court limits its discussion to the relevant standard.

Seventh Circuit has held that flexibility may be warranted where a plaintiff does not have access to the information necessary to plead with particularity, and that "Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery." *Emery v. Am. Gen. Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

As described above, Plaintiffs have clearly indicated which labeling statements they are challenging, as well as the circumstances under which each Plaintiff viewed the statements and relied on them when purchasing the refill products. Plaintiffs have therefore provided sufficient information for Defendants to be on notice as to the conduct at issue in this suit.

Accordingly, the Court finds that Plaintiffs have satisfied Rule 9(b).

c.   Failure to State a Claim

The Illinois Supreme Court has cautioned that whether a defendant violated the ICFA "is a factual issue which must be decided by the trier of fact." *People ex rel. Daley v. Datacom Systems Corp.*, 585 N.E.2d 51, 66 (Ill. 1991) ("As a matter of law, for purposes of a motion to dismiss the action on the pleadings, we cannot say the notices were not misleading, or did not employ deception, fraud, false pretenses, false promise, misrepresentation or the concealment or omission of a material fact in violation of the Consumer Fraud Act."); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 913 (N.D. Ill. 2012) ("As a matter of law and for the purposes of deciding a motion to dismiss, the Court cannot say that the notices were or were not deceptive in violation of the ICFA."); *see also Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (holding that "ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss," but also noting that "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law") (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001)).

Moreover, "the Consumer Fraud Act itself states it is to be 'liberally construed to effect [its] purposes.'" *People ex rel. Daley*, 585 N.E. at 65. Indeed, reviewing the legislative history of the Act, the court concluded that "the legislature did not intend for the Consumer Fraud Act to be applied narrowly." *Id.*

For the reasons described at length above, the question of whether Defendants' statements were deceptive under the ICFA is one of fact, which the Court cannot resolve at this time.

Accordingly, the Court finds that Plaintiffs have pled facts sufficient to support claims under the ICFA on behalf of the Illinois subclass. Claim Eight will proceed against both Defendants.

### 7. *Florida (Claim 9)*

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stats. §§ 501.201, *et seq.*, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Fla. Stat. § 501.204.

### a. Statute of Limitations

The statute of limitations for a FDUTPA claim is four years. *See* Fla. Stat. § 95.11(3)(f); *see also Fisher v. Harley-Davidson Motor Grp., LLC*, No. 19-14154, 2019 WL 8014364, at *2 (S.D. Fla. Oct. 18, 2019) ("The statute of limitations for claims under FDUTPA is four years. . . . When a FDUTPA claim is based on a product purchase, the statute begins to run from the date of sale.") (citations omitted).

Because the statute of limitations for a FDUTPA claim is four years, Defendants' arguments regarding timeliness do not apply.

Accordingly, Defendants' arguments regarding the statute of limitations period do not apply to Claim Nine.

### b.   Pleading Requirements

A consumer claim for damages under FDUTPA has three elements: (1) an objectively deceptive act or unfair practice; (2) causation; and (3) actual damages. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

### i.   Actual Damages

A plaintiff cannot state a cause of action under the FDUTPA if the consumer fails to plead that they suffered actual damages. *See Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (holding that the plaintiff failed to state a cause of action under FDUTPA because she suffered no actual damages and affirming dismissal of complaint with prejudice). Indeed, "[t]he members of [a] putative class who experienced no actual loss have no claim for damages under FDUTPA." *Rollins, Inc.*, 951 So. 2d at 873. And the FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortgage Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (quoting *Rollins*, 951 So. 2d at 873).

The FDUTPA has been interpreted, however, to allow plaintiffs to recover the diminished value of their purchased under a price premium theory of damages. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 453 (5th Cir. 2001). This theory of injury is based on one formula for calculating actual damages under the FDUTPA, which looks to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."

*Carriuolo*, 823 F.3d at 986 (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)).

Here, because Plaintiffs have clearly alleged that the product they received (a multi-pack of refill cartridges that lasted less than one year) was worth less than the product they believed they were purchasing (a multi-pack of refill cartridges that would last one year), they have stated a cognizable injury under the FDUTPA.

### ii.   Causation

Causation is a necessary element of the FDUTPA claim, and "causation must be direct, rather than remote or speculative." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012); *see also* Fla. Stat. § 501.211(2) (A "person who has suffered a loss as a result of a violation of this part . . . may recover actual damages."). To prove the causation element of a FDUTPA claim, a plaintiff must prove that the defendant's unfair or deceptive actions caused them to suffer actual damages. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (finding that the plaintiffs had failed to demonstrate causation because their FDUTPA claim rested on allegations of deceptive pricing, but the retail stores, rather than the defendants, were responsible for setting the retail prices of the products). In the context of allegedly false or misleading statements, "a plaintiff need not prove reliance on the [defendant's] allegedly false statement . . . but rather a plaintiff must simply prove that an objectively reasonable person would have been deceived." *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011).

Plaintiffs allege that they purchased the refill products in reliance on Defendants' representations, and that these representations were the "but for" cause of their purchases. Compl. ¶¶ 162, 165. Plaintiffs have alleged that these representations were made by Defendants,

who worked "[i]n concert" to "create[] and/or authorize[] the false, misleading, and deceptive manufacturing, marketing, advertising and distributing of the Refill Products." *Id.* ¶¶ 59–60.

Accordingly, Plaintiffs' allegations suffice to plead causation under the FDUTPA.

### iii.  Rule 9(b)

The "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.'" *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)). Rule 9(b)'s heightened pleading standards are therefore not applied to claims under the FDUTPA.

Accordingly, Defendants' arguments regarding Rule 9(b) do not apply to this claim.

### c.  Failure to State a Claim

The FDUTPA prohibits both unfair and deceptive acts and practices. Deceptive acts are assessed under an objective standard, and the plaintiff must demonstrate that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo*, 823 F.3d at 983–84 (quoting *State Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)). An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Generally, the question of whether an act is unfair or deceptive is not proper to resolve on a motion to dismiss. *See, e.g.*, *State Farm Mutual Auto. Ins. Co. v. Performance Orthopaedics &*

*Neurosurgery LLC*, 278 F. Supp. 3d 1307, 1316 (S.D. Fla. 2017) ("Whether [specific] conduct

constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine.")

(quoting *Nature's Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013))

(alteration in original); *Fed. Trade Comm'n v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1338

(S.D. Fla. 2016) ("The adequacy of any of the defendants' disclaimers presents a fact question

that is not proper on a motion to dismiss for failure to state a claim upon which relief can be

granted.").

For the reasons described at length in the sections above, the Court declines to dismiss

Plaintiffs' claim under the FDUTPA at this time.

Accordingly, the Court finds that Plaintiffs have pled facts sufficient to support claims

under the FDUTPA on behalf of the Florida subclass and Claim Nine will proceed against both

Defendants.

### B.  Common Law Claims

Plaintiffs have also brought claims of breach of implied and express warranty. Compl. ¶¶

177–88. These claims have been brought on behalf of each of the subclasses, according to the

applicable state law where the purchases were made. *Id.* ¶¶ 178, 183.

Defendants raise two arguments against these breach of warranty claims. First, they argue

that both breach of warranty claims fail because Plaintiffs lacked privity with Defendants. Mem.

at 50–54. All Plaintiffs have pled that they purchased the refill products from some third-party

vendor, and none allege that they purchased the products directly from Defendants; accordingly,

there is no dispute that Plaintiffs did not have privity with Defendants. Plaintiffs' response

instead argues that privity is not required for breach of implied or express warranty claims

premised on false advertising or misleading statements. Opp'n at 38–40.

Defendants also argue that the express warranty claims fail because the statements on the refill products' packaging did not constitute actionable affirmations or promises. Mem. at 47–50. As to the implied warranty claims, Defendants argue that these too must fail because the refill products were fit for their ordinary purpose. *Id.* at 51–52.

The Court will address the arguments regarding the express and implied warranty claims in turn.

### 1. *Breach of Express Warranty (Claim 11)*

An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[,]" or "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Uniform Commercial Code ("UCC") § 2-313.

### a. Privity

Privity, or a legal relationship between parties who have entered into a contract or transaction, is typically required to sustain a claim of breach of warranty. Yet, different states have differing standards and recognize different exceptions with regard to the privity requirement for express warranty claims. The Court lays out the relevant standards below.

As a preliminary note, Plaintiffs have withdrawn their express warranty claim under Connecticut law, acknowledging that it must fail for lack of privity. Opp'n at 38. Accordingly, the Court will dismiss Claim Eleven as to the Connecticut subclass.

In New York, Illinois, California, and North Carolina, privity is not required for express warranty claims involving direct advertising to customers. *See Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 207 (W.D.N.Y. 2020) (where "the alleged express warranty is based on

product advertising or labeling, the representations made by the manufacturer are sufficient to form '[a]n express warranty . . . and privity is not required to sustain a cause of action.'") (quoting *Perez v. B. Braun Med., Inc.*, 17-CV-8512 (LLS), 2018 WL 2316334, at *5, (S.D.N.Y. May 9, 2018)); *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013) ("[E]xpress warranty claims are permitted to bypass the privity requirement if a manufacturer 'expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs.'") (quoting *Bakopoulos v. Mars Petcare U.S., Inc.*, 592 F. Supp. 3d 759, 765 (N.D. Ill. 2022)); *Cruise v. Smith & Nephew, Inc.*, 621 F. Supp. 3d 584, 589 (W.D.N.C. 2022) (While North Carolina generally imposes a contractual privity requirement for breach of warranty claims, courts recognize "an exception for buyers who are not in privity with the manufacturer when the manufacturer intends its warranties to be conveyed to a buyer through the retailer . . . . This normally occurs when a manufacturer advertises, labels, or provides manuals with its products with the intention of inducing the ultimate purchaser to buy the product from a retailer."); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1161 (S.D. Cal. 2015) (While privity is generally a required element of a breach of express warranty cause of action, there is "an exception based on a plaintiff's reliance on a seller's representations in labels or advertising materials to provide the basis for an express warranty.").

The caselaw in Florida regarding the privity requirement for express warranty claims has been described as "murky" and "a moving target." *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 3d 1336, 1342 (S.D. Fla. 2009); John W. Reis, *The Magic of Privity in Express Product Warranty Claims: A Plaintiffs Perspective*, 79 FLA. BAR J. 50, 50 (2005). Yet, where, as here, the manufacturer made claims intended to reach the consumer, and where there was no middleman that the end-purchaser might reasonably expect to have relevant knowledge or expertise, Florida

courts have relaxed the privity requirement. *See Valiente v. Unilever U.S., Inc.*, Case No. 22-21507-CIV-LENARD/LOUIS, 2022 WL 18587887, at *14 (S.D. Fla. Dec. 8, 2022) (finding it "significant" that the express warranty that the defendant allegedly breached was contained on the packaging of the Eclipse gum and that the cashiers at the stores where plaintiffs purchased the gum were unlikely to be familiar with the claims).

Accordingly, even in the absence of privity, Plaintiffs' breach of express warranty claims may proceed under New York, Illinois, North Carolina, California, and Florida law.

### b.  Warranty

The following sections describe the relevant standards for express warranties under New York, Illinois, North Carolina, California, and Florida law. Because the law governing express warranties is similar across all five states, the Court subsequently addresses the parties' arguments as to all of the express warranty claims collectively.

### i.  New York

Under New York law, an express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Avola v. La.-Pac. Corp.*, No. 11-CV-4053 (PKC), 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013) (quoting N.Y. U.C.C. § 2-313(1)(a)). In order to state a claim for breach of express warranty, a plaintiff must allege: (1) the existence of a material statement amounting to a warranty; (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller; (3) breach of the warranty; and (4) injury to the buyer caused by the breach. *Id.*; *Goldemberg*, 8 F. Supp. 3d at 482. Whether a statement constitutes a warranty is a question of fact, and where a court "is unable to determine as a matter of law that [a] statement[] [is] not misleading under GBL § 349,

it is equally inappropriate to determine [it is] not misleading for the warranty claim"

*Goldemberg*, 8 F. Supp. 3d at 483.

### ii.   California

Under California law, in order to state a claim for breach of express warranty, a plaintiff must allege: "(1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986–87 (N.D. Cal. 2009). "To establish the existence of an express warranty, a plaintiff must point to a specific and unequivocal written statement." *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) (internal quotation marks omitted). Statements containing "mere puffery"—in other words, "vague, highly subjective claims as opposed to specific, detailed factual assertions"—are not warranties. *Sanders*, 672 F. Supp. 2d at 987 (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)).

"The determination as to whether a particular statement is an expression of opinion or an affirmation of fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 220 Cal. Rptr. 392, 396 (Cal. Ct. App. 1985) (quoting *Willson v. Municipal Bond Co.*, 59 P.2d 974, 976 (Cal. 1936)). But, while there is no formula for distinguishing between affirmations of fact and puffery, "[i]t is clear that statements made by a manufacturer or retailer in an advertising brochure which is disseminated to the consuming public in order to induce sales can create express warranties." *Id.*

### iii.  Illinois

To state a claim for breach of express warranty under Illinois law, a plaintiff must demonstrate that the defendant breached an "affirmation of fact or promise that was made a part of the basis of the bargain." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E. 2d

334, 340 (Ill. App. Ct. 2007). Warranties are considered "creatures of contract" and therefore "the language of the warranty itself is what controls and dictates the obligations and rights" of the parties. *See Bakopolous v. Mars Petcare U.S., Inc.*, 592 F. Supp. 3d 759, 765 (N.D. Ill. 2022). Moreover, the quality of that language matters. "An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 906 (N.D. Ill. 2013) (citing 810 Ill. Comp. Stat. § 5/2–313(2) (2012)); *Weiss v. Rockwell Mfg. Co.*, 293 N.E.2d 375, 381 (Ill. App. Ct. 1973). And Illinois courts distinguish between warranties and statements that boast unverifiably of the quality of a product (referred to as "puffing"), which cannot create express warranties. *Avery*, 835 N.E.2d at 846 ("'Puffing' denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined . . . .").

In order "to be actionable under the theory of express warranty[,] the claim must be based on an affirmation of fact or promise which is not a statement representing the seller's opinion or commendation of the goods and which is false." *Weiss*, 293 N.E.2d at 381; *Reid*, 964 F. Supp. 2d at 906–07 ("[T]he decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment.") (quoting *Royal Bus. Mach., Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir. 1980) (referencing Illinois's test, where claims arose under the UCC, as adopted by Indiana)). "The question of whether a statement constitutes an express warranty or mere puffery is generally considered a question of fact." *Reid*, 964 F. Supp. 2d at 906.

iv. North Carolina

North Carolina law provides that "a seller creates an express warranty through '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]'" *Asby v. Medtronic, Inc.*, 673 F. Supp. 3d 787, 796 (E.D.N.C. 2023) (quoting N.C. Gen. Stat. § 25-2-313(l)(a)). To state a claim for breach of an express warranty, a plaintiff must plausibly allege: "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." *Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., Inc.*, 697 S.E.2d 439, 447 (N.C. 2010) (quotation omitted). When determining whether a statement constitutes an express warranty, courts consider "whether the seller's statements were so regarded by the buyer as to be part of his reason for purchasing the goods." *Pake v. Byrd*, 286 S.E.2d 588, 589–90 (N.C. 1982). A seller need not, however, use the terms "warrant" or "guarantee," nor need they intend to create a warranty. N.C. Gen. Stat. § 25-2-313(2). Moreover, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Id.* "Whether the parties to the transaction have created an express warranty is a question of fact." *Id.* § 25-2-313, Comment 3 (1965).

v. Florida

Under Florida law, "[a] seller can create an express warranty by making an affirmation of fact to the buyer which relates to the goods and becomes part of the basis of the bargain between the parties." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983); Fla. Stat. Ann. § 672.313(1)(a). In order to determine whether a statement constitutes an express warranty, the Eleventh Circuit has adopted the standard set forth by the Seventh

Circuit and described above: "[t]he decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment." *Royal Typewriter Co.*, 719 F.2d at 1100 (quoting *Royal Bus. Mach., Inc.*, 633 F.2d at 41). "The existence of an express warranty is a factual issue for the jury to decide." *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1298 (M.D. Fla. 2014) (quoting *State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So. 2d 107, 109 (Fla. Dist. Ct. App. 1990)).

### vi.  Analysis

The caselaw of New York, California, Illinois, North Carolina, and Florida governing whether a statement constitutes an express warranty shares the following common themes: a warranty is (1) an affirmation of fact or a promise—but not an opinion—made by the seller about the goods, (2) which constitutes part of the basis of the bargain between buyer and seller. A statement is more likely to be a warranty, rather than merely puffery, if it includes specific factual assertions or communicates information about which the seller has special knowledge, which the buyer would not be expected to share. Finally, whether a statement constitutes a warranty is a question of fact.

Here, the two claims contested by Plaintiffs are not mere opinions or commendations of the refill products. Both the up-to-270 claim and the one-year claim express detailed, measurable, factual assertions about the capacity of the refill products. Moreover, Plaintiffs would be unlikely to have any independent knowledge about the number of diapers their child would likely use in a year or how long a refill cartridge would likely last their family—it would be reasonable, therefore, for a Plaintiff to rely on Defendants' statements on the packaging when

considering their purchase. And Plaintiffs have, in fact, alleged that they viewed and relied on Defendants' statements when deciding to purchase the refill products.

At this juncture, the Court cannot and need not determine whether Defendants' claims in fact amounted to express warranties. Given the relevant caselaw, it is clear that Plaintiffs have alleged sufficient facts to state a claim for breach of express warranty.

Accordingly, Claim Eleven will proceed, except as to the Connecticut subclass.

### 2. *Breach of Implied Warranty (Claim 12)*

In order for goods to be merchantable, they must conform to a number of implied warranties, including that they "are fit for the ordinary purposes for which such goods are used" and that they "conform to the promise or affirmations of fact made on the container or label if any." UCC §§ 2-314(2)(c), 2-314(2)(f).

Plaintiffs allege that Defendants have breached these implied warranties because: (1) the refill products "were not of the same average grade, quality, and value as similar goods sold under similar circumstances" and (2) they did not conform to the promises made on the container or label, in that they did not provide Plaintiffs with a year's worth of diaper disposal products. Compl. ¶¶ 185–87.

Defendants argue that Plaintiffs' implied warranty claims fail because they lacked privity with Defendants and because the refill products were fit for their ordinary purpose. Mem. at 51–53.

Plaintiffs clarify that they have alleged breach of implied warranty claims not under a theory that the refill products are unfit for their ordinary purpose, but under a theory that they did not conform to the promises or affirmations of fact made on the container or label. Opp'n at 39. They further reply that privity is not always required for implied warranty claims, noting two

exceptions. First, they argue that the privity requirement is relaxed where plaintiffs rely on written labels or advertisements of a manufacturer. *Id.* Second, they argue that the third party beneficiary doctrine in California, New York, Illinois, North Carolina, and Florida exempts Plaintiffs from the privity requirement. *Id.*

Defendants reply that, where an implied warranty claim is based solely on whether the product in dispute conforms to the affirmations on the label, the claim "rises and falls with express warranty claims brought for the same product." Reply at 29 (citing *Butts v. Cibo Vita, Inc.*, No. 22-cv-00644, 2023 U.S. Dist. LEXIS 47427, at *20 (E.D. Cal.)). Defendants contend that the third-party beneficiary exception is well-established in these states, and argues that Plaintiffs have not alleged the facts necessary to invoke the exception (noting that in order to claim rights as a third-party beneficiary, a plaintiff generally must demonstrate the existence of a valid contract between the other parties, that the contract was intended for their benefit, and that the benefit to them was immediate, rather than incidental). Reply at 30.

The Court mostly agrees with Defendants.

The two exceptions to the privity requirement identified by Plaintiffs are unavailing. First, as Defendants have argued, Plaintiffs have not alleged any of the facts necessary to invoke the third-party beneficiary exception: they have not pled the existence of a contract between Defendants and the third-party merchants from whom they bought the refill products, nor have they explained how such a contract was intended for their benefit. Second, although Plaintiffs argue that the privity exception for claims based on product labeling or advertising applies to implied warranty claims (as well as express warranty claims), the Court is unpersuaded. Plaintiffs have raised this argument only with respect to claims under California and New York law.

In California, although, as Plaintiffs acknowledge, the caselaw is "mixed," *see* Opp'n at

40 n.9, the majority of courts apply the vertical privity requirement to implied warranty cases,

including those where a plaintiff has relied on written labels or advertisements of a manufacturer.

Some courts, including the ones noted by Plaintiffs, cite *Clemens v. DaimlerChrysler Corp.*, a

Ninth Circuit case, for the proposition that there is no privity requirement in such cases. *See* 534

F.3d 1017, 1023 (9th Cir. 2008) (recognizing an exception to the privity requirement for breach

of warranty claims "when the plaintiff relies on written labels or advertisements of a

manufacturer"). But the *Clemens* decision did not clearly specify to which type of warranty this

exception applied, and the California Supreme Court case relied upon in *Clemens* explicitly held

that the vertical privity exception for representations on labels or advertisements "[is] applicable

only to express warranties." *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 986 n.201 (C.D.

Cal. 2015) (quoting *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1046–47 (Cal. 1954)); *Martin

v. Tradewinds Beverage Company*, 16-CV-9249 PSG (MRW), 2017 WL 1712533, at *11 (C.D.

Cal. Apr. 27, 2017). As a result, most California courts have found that implied warranty claims

require vertical privity.

As to the New York claim, even the case cited by Plaintiffs acknowledges that "[t]he law

is clear that, absent any privity of contract between Plaintiff and Defendant, [the implied

warranty] claim cannot be sustained as a matter of law except to recover for personal injuries."

*Weisblum v. Prophase Labs, Inc.* 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015) (dismissing the

implied warranty claim on behalf of the New York subclass for lack of privity).

Thus, despite Plaintiffs' arguments to the contrary, nearly all of the implied warranty

claims fail for lack of privity. *See Source One Fin. Corp. v. Rd. Ready Used Cars, Inc.*, No. CV-

13-6034341-S, 2014 WL 1013121, at *5 (Conn. Super. Ct. Feb. 14, 2014) ("As a general rule,

'in order to sustain an action for breach of express or implied warranty there has to be evidence of a contract between the parties, for without a contract there [can] be no warranty.'") (quoting *Hamon v. Digliani*, 174 A.2d 294, 295 (Conn. 1961)); *Jackson v. Eddy's LI RV Center, Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012) ("While claims made pursuant to written warranties do not require a showing of privity of contract, New York law allows claims of implied warranty to be brought only by those in privity with the named defendant.") (citing *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) ("To have a cause of action for breach of an implied warranty of fitness, therefore, privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller."); *Cameron v. Battery Handling Sys., Inc.*, 524 F. Supp. 3d 860, 865 (C.D. Ill. 2021) ("Where a plaintiff claims breach of an implied warranty in a case involving only economic damages, 'he or she must be in vertical privity of contract with the seller': only the immediate seller may be sued.") (quoting *Mekertichian v. Mercedes-Benz U.S.A., LLC.*, 807 N.E.2d 1165, 1168 (Ill. 2004)); *Smith*, 663 F. Supp. 3d at 1342 ("It is now well-settled that, barring certain exceptions, '[u]nder Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.'") (quoting *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005)); *Tapia*, 116 F. Supp. 3d at 1160 ("[C]ourts have applied the privity requirement to both breach of the implied warranty of fitness, and breach of the implied warranty of merchantability.").

 The single exception may be under North Carolina law. The North Carolina Products Liability Act "removes the privity requirement for 'a buyer, as defined in the Uniform Commercial Code, of the product involved' where the buyer brings 'a product liability action directly against the manufacturer of the product involved for breach of implied warranty.'"

*Cruise*, 621 F. Supp 3d. at 590 (quoting N.C. Gen. Stat. Ann. § 99B-2). "Thus, a buyer who is

not in privity with the manufacturer can bring a breach of implied warranty claim,

notwithstanding the lack of privity." *Johnson v. Smith & Nephew, Inc.*, 621 F. Supp. 3d 593, 598

(W.D.N.C. 2022). To the extent that Plaintiffs can allege any of these statutory exceptions apply

here, the proposed North Carolina subclass may be able to proceed on a claim of breach of

implied warranty, under the theory that the refill products did not conform to Defendants'

promises or affirmations of fact. *See, e.g.*, *Kinlaw v. Long Manufacturing N.C., Inc.*, 259 S.E. 2d

552, 557 (N.C. 1979) (holding that, where a plaintiff "purchased both goods and a promise"

based on an express guarantee of performance from the manufacturer, the plaintiff "could

reasonably expect the author of the warranty to stand by its promise . . . and may base a claim

[for breach of implied warranty] upon its alleged breach."). If so, leave to amend the Complaint,

to the extent sought, conceivably could be granted.

Accordingly, the Court grants Defendants' motion to dismiss Count Twelve with

prejudice, and only with respect to the North Carolina subclass, without prejudice.

### 3.  *Magnuson Moss Warranty Act (Claim 10)*

The Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301, *et seq.*, authorizes a

consumer to bring a private civil action in a federal district court against a manufacturer or

retailer who fails to comply with the terms of a written or implied warranty. *See* 15 U.S.C. §

2310(d)(1)(B). The MMWA essentially incorporates state law on breach of warranty; it does not

create a separate substantive cause of action but rather sets parameters under which a state law

cause of action may be decided in federal court. *See Frasier v. Stanley Black & Decker, Inc.*, 109

F. Supp. 3d 498, 507 (D. Conn. 2015); *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 (NGG)

(VVP), 2015 WL 5686507, at *9–10 (E.D.N.Y. Sept. 25, 2015). The Act also requires that, to be

heard in federal court, the amount in controversy of any single claim in the case be $25 or more and that the amount for "all claims to be determined" in the case be "$50,000 (exclusive of interests and costs)" or more. 15 U.S.C. §§ 2310(d)(3)(A)–(B); *see also Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 131 (S.D.N.Y. 1982) ("For all claims aggregated, the amount in controversy, exclusive of interest and costs, must equal or exceed $50,000.").

Based on Defendants' alleged breach of implied and express warranties, Plaintiffs allege that Defendants have violated their statutory rights under the MMWA. Compl. ¶¶ 169–76.

Defendants argue that this Court does not have subject matter jurisdiction over Plaintiffs' MMWA claim (Count 10) for two reasons. First, Defendants argue that Plaintiffs have not met the jurisdictional requirements of the MMWA, which provides that federal district courts may decide MMWA claims in class action suits only where there are more than 100 named plaintiffs. Mem. at 53 (citing 15 U.S.C. § 2310(c)(3) ("No claim shall be cognizable . . . if the action is brought as a class action and the number of named plaintiffs is less than one hundred.")). Defendants argue that, unlike for the rest of Plaintiffs' claims, the Class Action Fairness Act (CAFA) cannot confer subject matter jurisdiction where a class does not meet the independent jurisdictional requirements of the MMWA. Mem. at 53. Second, Defendants argue that Plaintiffs' claim under the MMWA fails because Plaintiffs' have not established the existence of a viable state warranty claim, on which any MMWA claim would depend. Mem. at 54.

Plaintiffs respond that this Court has subject matter jurisdiction over their MMWA claims because CAFA provides an alternative basis for jurisdiction for claims brought on behalf of a class under the MMWA. Opp'n at 40–41. Plaintiffs also argue that their state warranty claims are adequately pled and therefore may support their claim under the MMWA. *Id.* at 40.

The Court disagrees.

As a preliminary matter, because the Court has determined that a subset of Plaintiffs' state warranty claims are viable, Defendants' second argument is moot.

Second, there remains disagreement among courts about whether the MMWA's jurisdictional limitations supersede CAFA's authorization of federal jurisdiction, and the Second Circuit has not squarely addressed this issue, although courts within the Second Circuit have. *See Weisblum*, 88 F. Supp. 3d at 293 (collecting cases).[10]

CAFA provides district courts with original jurisdiction over "any civil action" provided that certain criteria are met.[11] 28 U.S.C. § 1332(d)(2). There are several enumerated exceptions to this grant of jurisdiction, including the "local controversy" exception, the "home state" exception, and carve-outs for certain statutory provisions (*e.g.* certain provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934). *Weisblum*, 88 F. Supp. 3d at 294; 28 U.S.C. §§ 1332(d)(3), 1332(d)(4), 1332(d)(9)(a), 1332(d)(9)(c). There is no such exception for the MMWA, and arguably "[t]he ancient maxim expression *unius est exclusio alterius* (mention of one impliedly excludes others) cautions [the Court] against engrafting an additional exception to what is an already complex statute." *Weisblum*, 88 F. Supp. 3d. at 293 (quoting *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011)) (internal quotation marks omitted). Finally, "CAFA was passed with the clear intention of expanding federal court jurisdiction over class actions" and the MMWA's jurisdictional limitations were intended to overcome the absence of an amount-in-controversy requirement and to prevent trivial or minor actions from being brought as class

---

[10] To the extent that Defendants rely on *Montanez v. D&D Auto, LLC*, No. 3:15-cv-397 (VAB), 2016 WL 1254199 (D. Conn. Mar. 29, 2016), a case in which this Court declined to exercise supplemental jurisdiction over the plaintiff's MMWA claim on the basis of her valid Truth in Lending Act (TILA) claim, the comparison is inapposite. There, the plaintiff could not possibly satisfy the MMWA's jurisdictional amount. In any event, because the TILA does not provide a general basis for federal district courts to exercise original jurisdiction over civil actions, the Court's analysis in *Montanez* provides little guidance here.

[11] Because Defendants do not allege that Plaintiffs have failed to meet CAFA's jurisdictional requirements, the Court need not address these provisions of the statute.

actions in district court. *Id.* As a result, treating CAFA as an alternative basis for jurisdiction over MMWA claims could be consistent with the goals of both statutes.

A relatively recent Ninth Circuit ruling, however, suggests that this is not the case, and instead recognizes "the statutory language of the MMWA and of CAFA" as "irreconcilable—the MMWA simply prevents claims under that Act from proceeding in federal court absent the satisfaction of certain jurisdictional prerequisites." *Floyd v. Am. Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (citations omitted). Moreover, that ruling suggests that: "Construing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA. But the legislature's intent to repeal a statute must be clear and manifest." *Id.* (citations and internal quotation marks omitted). Thus, "CAFA may not be used to evade or override the MMWA's specific numerosity requirement . . . ." *Id.*

The Ninth Circuit's reasoning—subsequently followed by a court within the Second Circuit, *see Bayne v. Target Corp.*, 630 F. Supp. 3d 544, 552 (S.D.N.Y. 2022) (dismissing MMWA claim for lack of subject matter jurisdiction)—is sound, and will be adopted by this Court. Nevertheless, as the Ninth Circuit in *Floyd* also held, the dismissal of the MMWA claims does not foreclose the viability of the underlying state warranty claims. *See Floyd*, 966 F.3d at 1036 (vacating the dismissal of state-law claims because the district court wrongly concluded that the absence of the MMWA claims as a basis for subject matter jurisdiction required the dismissal of the pendent state-law claim, and recognizing that "CAFA expressly extends original federal jurisdiction to state-law claims in class actions under relaxed diversity requirements.")

Accordingly, the Court grants Defendants' motion to dismiss Claim Ten.

### 4.   *Remedies*

Defendants argue that Plaintiffs lack standing to pursue equitable or declaratory relief. Mem. at 58. First, they argue that Plaintiffs lack standing under Article III. *Id.* The Court has already addressed this argument above, and as such, will not address it again here.

The Court addresses Defendants' other arguments in turn.

a.   Injunctive or Declaratory Relief

Defendants argue that Plaintiffs lack standing to pursue injunctive or declaratory relief because they cannot establish a "real or immediate threat of injury" *Id.* at 59.

Plaintiffs respond that plaintiffs have standing to seek prospective injunctive relief when they assert that they will purchase a product again in the future. Opp'n at 46. They further argue that this case is distinguishable from others, in which the plaintiffs merely wish to purchase a product again in the future if certain changes are made; here, they argue, Plaintiffs "allege that they continue to need to buy the products just to receive the quantity that they believed they purchased from the beginning." *Id.* at 47.

Defendants reply that there is no reason to believe that Plaintiffs will incur new harm in the future if they purchase the refill products, since "having been allegedly deceived by the product's packaging once, they will not be under the same misapprehension." Reply at 38 (internal punctuation marks omitted). They argue that the Second Circuit has "squarely foreclosed the possibility of injunctive relief for past purchasers." *Id.* at 39 (citing *Berni v. Barilla, S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020) and *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *9 n.3 (S.D.N.Y. Mar. 18, 2022)).

The Court agrees.

In *Berni*, on standing grounds, the Second Circuit reversed the district court's certification of a class under Fed. R. Civ. P. 23(b)(2), which provides that a class may be

certified where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Berni*, 964 F.3d at 146. The Second Circuit recognized that, if, in pursuing injunctive relief, "some future injury is merely conjectural or hypothetical – then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing under Article III." *Id.* at 147. The court then concluded that in a deceptive advertising case, like this one, "future harm is not likely, and that, as a result, the injunctive relief sought would not provide a remedy for all members of the class." *Id.* "[T]here is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the [newer boxes of the product are] filled in the same way as the [boxes were before]." *Id.* at 148. As a result, based on this reasoning, there is no basis for this Court to find standing sufficient to permit the pursuit of injunctive relief here.

As Plaintiffs note, some courts within this Circuit have held to the contrary, and have affirmed that such plaintiffs do have standing to seek prospective injunctive relief when they assert that they will purchase a product in the future. *See, e.g.*, *DeCoursey*, 673 F. Supp. 3d at 224 (finding that the plaintiffs had sufficiently alleged future injury and therefore had standing to seek injunctive relief, where the defendant continued to sell the products at issue and plaintiffs had indicated that they would purchase the products again if they were safe for use or re-labeled); *Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401 (NSR), 2020 WL 4766050, at *5 (S.D.N.Y. May 27, 2020) (holding that the plaintiff had standing to seek injunctive relief where she alleged that she would purchase the product at issue again if any purported defects were identified and eliminated); *Campbell v. Freshbev LLC*, 322 F. Supp 3d. 330, 337–38 (E.D.N.Y.

2018) (holding that plaintiffs had standing to seek injunctive relief where they pled a future desire to purchase defendant's product, despite defendant's argument that plaintiff "now knows the truth about the [product] and therefore cannot be fooled again."). Yet, many of these decisions preceded *Berni*, and therefore could not have considered this now binding precedent. And the one outlier decision post-*Berni*, *DeCoursey*, does not discuss, much less apply, *Berni* at all.

Accordingly, the Plaintiffs have not pled facts sufficient to establish standing to seek declaratory and injunctive relief, and the claim for injunctive relief will be dismissed.

b.   Equitable Relief

Defendants argue that Plaintiffs cannot bring claims for equitable relief under the UCL, FAL, or CLRA because they because they have not shown that damages available under the CLRA would be inadequate. *Id.* at 60 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).

Plaintiffs respond that the UCL and FAL have no inadequate remedy at law requirement. Opp'n at 48. Moreover, they contest Defendants' reliance on *Sonner*, arguing that the decision was inconsistent with the *Erie* doctrine and Second Circuit caselaw. *Id.* Plaintiffs argue that, where a federal court exercises diversity jurisdiction over state law claims, the courts must grant and deny relief as the state courts would, and cannot deny substantive rights created by state law. *Id.*

Defendants reply that the *Sonner* court opinion relied on the *Erie* doctrine in reaching its holding, and that federal courts' "equitable authority remains cabined to the traditional powers exercised by English courts of equity, even for claims arising under state law." Reply at 39 (citing *Sonner*, 971 F.3d at 840).

The Court agrees with Defendants.

In *Sonner*, contrary to Plaintiffs' suggestion, the Ninth Circuit thoroughly and thoughtfully considered how the *Erie* doctrine affected the ability of federal courts to award equitable relief under state statutes that had eliminated the inadequate-remedy-at-law requirement. 971 F.3d at 830–44. As held by the *Sonner* court, "state law cannot expand or limit a federal court's equitable authority" and, as a result, "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Id.* at 841. Plaintiffs cite exclusively cases that pre-date *Sonner* and, as a result, have provided no authority to suggest that this Court should hold otherwise.

In any event, Plaintiffs have not pled any facts to suggest that monetary damages are inadequate or to demonstrate that they are entitled to any form of equitable relief.

Accordingly, the Court must dismiss Plaintiffs' claims under the UCL and FAL, as well as any equitable claims under the CLRA. To the extent that Plaintiffs can plead additional facts that establish their standing to seek equitable relief, they may seek leave to amend their Complaint.

Claims Five and Six, as well as any part of Claim Four for equitable relief, are dismissed, and Plaintiffs may similarly seek leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

The case will proceed as follows: [12]

---

[12] The Court dismisses certain claims with prejudice because, as discussed at length in the legal analysis above, the caselaw suggests that no version of these claims could survive, and amendment would therefore be futile. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("Although Rule 15(a) of the Federal Rules of Civil

Claim One, the Connecticut Unfair Trade Practices Act claim, shall proceed only against Angelcare.

Claims Two and Three, the New York General Business Law § 349, and the New York General Business Law § 350 claims, shall proceed against both Defendants.

 Claim Four, the California Consumer Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*, claim, shall proceed against Angelcare only, and only as to damages against that Defendant.

Claim Five, the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, claim, is dismissed without prejudice.

Count Six, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, claim, is dismissed without prejudice.

Claim Seven, the North Carolina Unfair and Deceptive Practices Act, §§ 75-1.1, *et seq.*, claim, shall proceed against both Defendants.

Claim Eight, the Illinois Consumer Fraud and Deceptive Practices Act, §§ 815 ILCS 505/1, *et seq.*, claim, shall proceed against both Defendants.

Claim Nine, the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213 claim, shall proceed against both Defendants.

Claim Ten, the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, claim, is dismissed with prejudice.

Claim Eleven, the breach of express warranty claim, shall proceed against both Defendants, except as to the proposed Connecticut subclass.

---

Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend.") (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995)); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).").

Claim Twelve, the breach of implied warranty claim, is dismissed with prejudice, except as to the proposed North Carolina subclass, whose dismissal shall without prejudice.

Any prayer for injunctive relief is dismissed with prejudice.

Any prayer for equitable relief is dismissed without prejudice.

**SO ORDERED** at New Haven, Connecticut, this 29th day of March, 2024.

_____/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE